IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION


JOHN DOE,

      Plaintiff,              No. 1:18cv1413

 vs

MICHIGAN STATE UNIVERSITY,
MICHIGAN STATE UNIVERSITY BOARD
OF TRUSTEES, JOHN ENGLER, ANDE
DUROJAIYE, RICK SHAFER, DENISE
MAYBANK, KROLL ASSOCIATES, INC.,
MARK EHLERS and KENDRA WALDSMITH,

      Defendants.

- - - - - - - - - - - - - - - - - - -

JOHN DOE,

      Plaintiff,          No.  1:18cv1430

 vs.

MICHIGAN STATE UNIVERSITY,
MICHIGAN STATE UNIVERSITY BOARD
OF TRUSTEES, LOU ANNA SIMON,
JOHN ENGLER, ANDE DUROJAIYE,
RICK SHAFER, DENISE MAYBANK and
ELIZABETH ABDNOUR,

      Defendants.

Before:

                 THE HONORABLE JANET NEFF,
                    U.S. District Judge
                   Grand Rapids, Michigan
             Tuesday, September 10, 2019
           Premotion Conference Proceedings

```
 1        APPEARANCES:
                    Nesenoff & Miltenberg, LLP
 2                  STUART BERNSTEIN
                    363 Seventh Avenue, 5th Floor
 3                  New York, NY 10001
                    (212) 736-4500
 4
                    KEVIN J. STOOPS
 5                  Sommers Schwartz PC
                    One Towne Square, Suite 1700
 6                  Southfield, MI 48076
                    (248) 355-0300
 7
                    DONALD A. DAVIS
 8                  Springstead Bartish Borgula & Lynch
                    15 Ionia Avenue, SW, Suite 520
 9                  Grand Rapids, MI 49506

10                        On behalf of the Plaintiff;

11                  Pepper Hamilton LLP
                    MICHAEL E. BAUGHMAN
12                  300 Two Logan Square
                    18th and Arch Streets
13                  Philadelphia, PA 19103-2799
                    (215) 981-4964
14
                    JOHN T. MIHELICK
15                  Dinsmore & Shohl LLP
                    900 Wilshire Drive, Suite 300
16                  Troy,MI48084
                    (248) 203-1655
17
                          On behalf of Defendant Abdnour.
18
                    REID F. SMITH
19                  Winston & Strawn LLP
                    35 W Wacker Drive
20                  Chicago, IL 60601
                    (313) 558-5600
21
                          On behalf of Defendants Kroll,
22                        Ehlers and Waldsmith.

23        REPORTED BY:  MR. PAUL G. BRANDELL, CSR-4552, RPR

24

25
```

1                (Proceedings, 2:32 p.m.)

2           THE COURT:  Good afternoon everybody.  This is the

3   date and time set for a premotion conference in two cases

4   actually.  The first one is 1:18cv1430, and the second one is

5   1:18cv1413.  Well, let's get everybody's appearances on the

6   record, first.  With regard to the 1430 case, I'm sorry, the

7   1413 case, may I please have your appearances?

8           MR. BERNSTEIN:  Stuart Bernstein for the Plaintiff.

9           MR. STOOPS:  Kevin Stoops also on behalf of the

10  Plaintiffs.

11           MR. KONCIUS:  Brian Koncius, also on behalf of the

12  Plaintiffs.

13           MR. SMITH:  Reid Smith from Winston & Strawn on behalf

14  of the Co-Defendants.

15           MR. BAUGHMAN:  Michael Baughman, from Pepper Hamilton,

16  on behalf of the MSU Defendants.

17           MR. MIHELICK:  And John Travis Mihelick on behalf of

18  Ms. Abdnour.

19           THE COURT:  And are you not really here?

20           MR. DAVIS:  I am on the even number case.  I am not

21  odd, contrary to my reputation.

22           THE COURT:  There might be some debate on that.  Okay.

23  Then with regard to the 1413 case, may I have appearances?

24           MR. BERNSTEIN:  Stuart Bernstein for the Plaintiff.

25           MR. STOOPS:  Kevin Stoops for the Plaintiff.

1      MR. DAVIS:  Don Davis, Plaintiff.

2      MR. KONCIUS:  I am 13, Your Honor.

3      MR. MIHELICK:  Travis Mihelick on behalf of

4  Ms. Abdnour.

5      MR. BAUGHMAN:  And Michael Baughman on behalf of the

6  MSU Defendants.

7      MR. SMITH:  We are only on the 13.

8      THE COURT:  Now, we have what is -- what the

9  Plaintiffs are trying to style as a class action.  And I will

10  tell you right out of the box, I have some real -- I am quite

11  skeptical of that potential in the case for it to be a class

12  action, but we are going to find that out I assume at some

13  point fairly, fairly soon.

14      With regard to the 1413 case -- well, let me back up a

15  minute.  Mr. Baughman, you seem to have pretty much taken the

16  lead in a lot of this litigation, and Rita did a real

17  background check, and you apparently have quite a bit of

18  experience in this particular little niche --

19      MR. BAUGHMAN:  Yes, Your Honor.

20      THE COURT:  -- area.  And what I am hoping is that you

21  can continue to do that here in this particular -- these two

22  pieces of litigation.  I want to also make it clear, and I

23  realize that the Plaintiff thinks otherwise, but any briefing

24  that we proceed with in these two cases will not involve the

25  state claims.  We will concentrate on the -- I think there are

1    three federal claims made in each case and the class action

2    issue.  So I just want to sort of stop any potential

3    consternation over the fact that we are not going to talk about

4    the state case.

5         MR. BAUGHMAN:  Could I ask one question about that,

6    Your Honor?

7         THE COURT:  Sure.

8         MR. BAUGHMAN:  I understand Your Honor said the same

9    thing last time with respect to the pendency claim.  The one, I

10   think, important distinction here is that they are seeking to

11   certify a class on the state claim, which is their class seeks

12   relief under both the federal and the state constitution.  And

13   it is crystal clear that they can't do that state law claim

14   because of the 11th Amendment.  There is no way around the 11th

15   Amendment.  And because that's a class claim now, I'd ask for

16   the -- if they are not going to withdraw it I'd ask for the

17   opportunity to brief that because I think that will -- that's

18   important, Your Honor.

19        THE COURT:  The question then is whether the

20   Plaintiffs agree that the state -- the potential state class

21   action is precluded under current law?

22        MR. STOOPS:  We do not.

23        MR. BERNSTEIN:  Judge, we do not.  And I just may -- I

24   will defer to Kevin to some extent, but the class action has to

25   do with MSU and has to do with their -- and we are seeking

1    injunctive relief.  So qualified immunity 11th Amendment would

2    not apply regardless of a state claim or a federal claim, Your

3    Honor.  So it's the class action we are looking for is the

4    injunctive relief portion.

5        THE COURT:  Except you have pled damages, too.  And

6    your state case -- you have said that several times in your

7    papers.  We are only asking essentially for an equitable

8    relief.  But really, in those claims you are also asking for

9    damages, so you've got to really fish or cut bait on those.

10   Either you are asking for damages or not.

11       MR. BERNSTEIN:  Well, Your Honor -- and I will defer

12   to Kevin in a second.  It's just that it's my understanding

13   that that is not something unique in a class action.  There is

14   damages that are individual to a class member.  So there are

15   ways, and it's been done in my understanding in numerous

16   courts, is that once the class action has been resolved,

17   individual Defendants can seek individual damages, which have

18   been alleged in this case.  But the class action, and the class

19   action that we are certifying, are individuals who have been

20   denied their constitutional rights as stated by the 6th Circuit

21   as to the hearing and the cross examination.

22       MR. STOOPS:  Yes.  On behalf of the class maybe it

23   could have been styled more precisely, but the prayer for

24   relief I think a little bit, you know, may commingle what

25   relief we are asking for because there are the claims against

1    the individual Defendants, and then there is the class

2    allegation, but the class claim would simply be for a 23(b)(2)

3    injunctive relief class.  If the two named Plaintiffs in each

4    of the cases, the two individual Plaintiffs had individual

5    monetary relief they are entitled to because they succeed on

6    one or more of those claims that would be separate and distinct

7    from the class allegation and the requested class relief.

8           THE COURT:  There is your answer.

9           MR. BAUGHMAN:  Okay.  But this is what the complaint

10   says in the wherefore clause on the first cause of action for

11   violation of constitutional process.

12          THE COURT:  Speak more slowly.

13          MR. BAUGHMAN:  I'm sorry.  On the first cause of

14   action for violation of constitutional due process under 42

15   U.S. code Section 1983, which is what they are seeking a

16   judgment against the individual Defendants awarding Plaintiff

17   in the class damages in the amount to be determined at trial.

18          So I mean, maybe it's a pleading there.  There is a

19   ton of pleading problems with the complaint, including I don't

20   even know who the Defendants are in the class.  I don't want to

21   lose track of the 11th Amendment argument because they are

22   wrong.  You don't get -- under the Pemhurst case from the

23   Supreme Court ex parte Young is only an exception for

24   violations of federal law.  Prospective relief -- injunction

25   seeking prospective enforcement of federal law only.  State law

1    claims are barred by the 11th Amendment period.  So we got to

2    get that claim out of the case, Your Honor, before they try to

3    certify as a class.

4         THE COURT:  Well, I have to think about that,

5    Mr. Baughman, because I am not sure I agree with you.  I think

6    we can proceed on the federal claims and the federal class

7    action without worrying about the state.

8         MR. BAUGHMAN:  Even if it's a class action, Your

9    Honor, because there are unique issues with respect to state

10   law -- and it's easy to.  They are just wrong.  They are wrong.

11   Look at the Pemhurst case.

12        MR. BERNSTEIN:  Judge, Judge, we also cited Michigan,

13   you know, a Michigan case that our due process meaning

14   Michigan's clauses interpreted coextensively with the due

15   process clause of the United States Constitution.

16        MR. BAUGHMAN:  It doesn't matter.  It's the 11th

17   Amendment immunity is the issue.

18        THE COURT:  Well, let's reserve that.  We'll come back

19   to that in a little bit.

20        MR. BAUGHMAN:  Okay.

21        THE COURT:  So let's talk first of all about 1413 and

22   your proposed motion.  Mr. Baughman?

23        MR. BAUGHMAN:  Yes, Your Honor.  I mean, there is a

24   couple pieces to our motion.  If it makes sense maybe I'll

25   start with the class action claim.  We'd like to see you strike

1    the class action.  I already mentioned the state constitutional

2    claim is out under the 11th Amendment.  So we are left with the

3    federal constitutional claim.  The law is clear that if on the

4    base of the --

5              THE COURT:  You have to speak more slowly.

6              MR. BAUGHMAN:  I apologize.  The law is clear that if

7    from the face of the complaint it is clear that no class can be

8    certified, then the Court has authority before discovery even

9    starts to strike the allegations.  And it should do that here

10   because the class is doomed to failure from the start.  There

11   is a ton of problems with the class, but let me focus on I

12   think the most significant one.

13             Okay.  They are trying, I guess, to bring a 23(b)(2)

14   class action, which you are not supposed to be able to get

15   damages even though they seem to be pleading damages.  Under

16   the Dukes versus Wal-Mart case, in order to bring a claim like

17   that, commonality doesn't mean just any common questions exist.

18   There is always common questions in a case.  It has to be a

19   common issue if decided in a yes/no fashion will in one stroke

20   give relief to the entire class.  And the argument that they

21   are raising here is that, well, under the Doe versus Baum cases

22   everybody gets a live hearing and a cross examination.  Doe

23   versus Baum doesn't say that.  Doe versus Baum says that you

24   only get a live hearing and cross examination if credibility is

25   key in the case.

1          THE COURT:  Right.

2          MR. BAUGHMAN:  Right.  So in order to determine that,

3     the only way to know that is to look at each and every single

4     case to determine whether or not credibility is at issue.  And

5     while they say, oh, well credibility is always going to be at

6     issue, the 6th Circuit has said otherwise.  So one, the

7     primarily cases they rely upon is this Flaim case, right?  And

8     the Flaim case said in the most serious cases cross examination

9     might be required, but it wasn't in that case, because in that

10    case the central fact was admitted by the Defendant.  That

11    could happen in any number of these cases.  Might be the

12    Defendant admits his conduct.  Maybe the conduct is undisputed

13    but it's just a question of sort of interpretation of the

14    facts, which I think is actually the case in one of these two

15    cases that we're dealing with.

16          The bottom line is -- and again, there is a ton of

17    problems with this class in addition to that.  I think, you

18    know, for example, the injunctive relief they are seeking is

19    expungement of their records.  Okay.  Well, if they are seeking

20    that, then we are entitled to know whether there is prejudice,

21    meaning was there really a substantive harm in addition to a

22    procedural harm?  How do we solve that?  We have to look at

23    each and every case.  Class action doesn't work here, Your

24    Honor, and like I said, there is a ton of reasons for that.

25    We'd like the opportunity to set forth those reasons in a brief

1    to Your Honor.

2            THE COURT:  I happen to think you should, but what

3    does the Plaintiff say?

4            MR. BERNSTEIN:  Your Honor -- and again, I apologize

5    for tag teaming, but Kevin brings in certain things and

6    arguments on the class.  I just want to point out Mr. Baughman

7    has argued this, and I respectfully disagree with his

8    interpretation of Baum.  Baum clearly, unequivocally sets two

9    requirements, two things, and it says -- and I am reading from

10   the court -- I am reading from the court's decision.  It's

11   actually page 6.  And it says, so consistent with this command

12   our circuit has made two things clear.  One, if a student is

13   accused of misconduct, the university must hold some sort of

14   hearing before imposing a sanction as serious as expulsion or

15   suspension, and two, when the university's determination turns

16   on the credibility of the accuser, the accused or witnesses,

17   that hearing must include an opportunity for cross examination.

18           So respectfully, Your Honor, Baum doesn't say you only

19   get both if there is a question of credibility.  Baum clearly,

20   unequivocally, without interpretation, guarantees everyone a

21   hearing.

22           Then there is a question of cross examination if it's

23   only credibility.  Now, with regards to that, so it's clear

24   that they didn't have a hearing, and I don't think counsel is

25   going to say that Michigan State gave a hearing in violation of

1    their policy, kind of secret hearing, because their policy
2    didn't require one or didn't call for one, so they didn't give
3    a hearing.  So right then and there they were in violation of
4    Baum.
5        Now, next in terms of the credibility question, Your
6    Honor, the 6th Circuit -- the 6th Circuit has said -- the 6th
7    Circuit has said, Your Honor, in Gagne versus Booker, 680 F.3d
8    493, 2012, moreover, as the 6th Circuit has expressly stated,
9    credibility will almost always be the cornerstone of a rape or
10   sexual assault case even if there is physical evidence.
11       So Your Honor, the argument that we are not going to
12   be able to establish a class based on 6th Circuit law I think
13   is really, really a stretch.  Baum clearly gives everyone a
14   hearing, then gives cross examination on credibility.  And the
15   6th Circuit in 2012 said at almost every rape or sexual assault
16   case credibility is an issue.
17       And then additionally, Your Honor, it won't be very
18   difficult with some discovery without a motion to determine the
19   number of people that we are looking at that where credibility
20   has not been an issue.  And one of the cases that counsel cites
21   in their paper is the North Michigan case, Your Honor, Doe
22   versus North Michigan University, for the premise of qualified
23   immunity.  And I didn't want to go there, but the thing in that
24   case, Your Honor, the Plaintiff, Doe in that case, admitted,
25   admitted the violation.  So clearly, credibility is not an

1    issue, and that's going to be very, very, very easy to

2    determine from the investigative reports.

3             THE COURT:  Well, the Northern Michigan case was a

4    little bit different.  There the Defendant was a real doofus

5    and he admitted things that he didn't really believe he did.

6             MR. BAUGHMAN:  Could I briefly respond?

7             MR. BERNSTEIN:  Could my co-counsel just before

8    Mr. Baughman?

9             MR. BAUGHMAN:  I am going to forget my response.

10            MR. STOOPS:  I heard opposing counsel say that this is

11   an issue of commonality that would be a proper grounds to

12   strike the class.  In my practice, certainly in the case law,

13   motions to strike at this early juncture are very rarely

14   granted, very rarely filed because there is -- it's more

15   streamlined and more economical for the Court to let the

16   parties engage in the limited discovery to go forward with the

17   class certain motions.

18            THE COURT:  Which is generally what I do, but in this

19   case I really am persuaded, I guess, by what I have read so

20   far, that, for instance, on the issue of typicality.  Every

21   single one of the People who are involved in this case or who

22   would be involved if this were a class action would have

23   different facts, totally different facts unless you have some

24   sort of a serial sexual predator on your hands.  So you are

25   talking -- I don't know the size of your class, but

1    particularly where you extend it out into every potential

2    future student at Michigan State University has to be

3    encompassed in this injunction, nothing much about an overreach

4    there, but it does seem a little expansive to me.

5            MR. STOOPS:  Your Honor --

6            THE COURT:  But typicality, where do you have

7    typicality?

8            MR. STOOPS:  Typicality does not need to lie in the

9    specific factual allegations related to each person.

10           THE COURT:  But you are going to have to examine every

11   single one.

12           MR. STOOPS:  No, because under Baum you have to have

13   the opportunity to have the hearing regardless of the factual

14   allegations underlying your particular circumstance.  That's --

15   each individual here is typical there and that's a commonality

16   issue.

17           THE COURT:  That's just sticking your finger in the

18   dike and at some point it is going to come out and the whole

19   thing is going to come down.

20           MR. STOOPS:  I respectfully disagree.

21           THE COURT:  I'm sure you do, but I think you are

22   wrong.

23           MR. STOOPS:  And I think -- I think opposing counsel

24   is misaligning or misinterpreting commonality with

25   ascertainability.  On the credibility issue it's easily

1    feasible to ascertain the class members here.  The final

2    investigative report will indicate and allow discovery to

3    proceed to find out who had credibility determinations at issue

4    in their particular investigation.  The class can easily be

5    ascertained, even on the second prong where you need to make a

6    credibility determination.

7           On the first prong, again, it's our position that Doe

8    versus Baum and the predecessors make clear that you get a

9    hearing regardless of the circumstances of your charge.  If we

10   are correct on the law there, then there is certainly no class.

11   There are no issues with typicality, commonality or

12   ascertainability.  Everybody should have been afforded a

13   hearing, and I don't believe MSU can deny that it did not

14   afford those hearings.

15           MR. BAUGHMAN:  Right.  So what Baum says is some kind

16   of hearing.  Right?  And it's not true we didn't have some kind

17   of hearing.  We had a hearing through a single investigator

18   model, which was never --

19           MR. STOOPS:  A single investigator model?

20           MR. BAUGHMAN:  Single investigator model, which prior

21   to Baum at least a lot of people used.  And Baum still doesn't

22   say that you have to use it in every case.  It says you have to

23   use it where credibility is at issue.  They read the case

24   differently.

25           MR. BERNSTEIN:  I disagree with that, Judge.

1          MR. BAUGHMAN:  And it also clearly doesn't apply to

2     cases that don't involve suspension or expulsion which --

3          MR. BERNSTEIN:  No.  It's not.  Respectfully, Your

4     Honor, I apologize for interrupting.  I think our class talks

5     about, you know, expulsion and suspension, but I apologize.

6          MR. BAUGHMAN:  It doesn't.

7          MR. STOOPS:  It says disciplinary sanctions,

8     suspensions or expulsion.

9          MR. BAUGHMAN:  That's not my recollection of the

10    definition.

11         MR. BERNSTEIN:  That's the class definition.

12         MR. STOOPS:  That's the class definition.

13         MR. BAUGHMAN:  And also, if you look at -- it's not

14    just Baum.  There is a whole line of 6th Circuit cases that

15    talk about due process, and all of those cases emphasize that

16    it's a balancing test as to what process is due under certain

17    situations and whether the process given in any particular case

18    was sufficient.  Baum simply doesn't set forth some binary like

19    way of determining this, where the entire class rises or falls

20    with one decision.  It just doesn't.  The 6th Circuit cases

21    that my friend Stuart cites, with respect, it's a dissenting

22    opinion or concurring opinion in the Baum case, and it doesn't

23    say that.  It's talking about habeas corpus at issue.  It

24    doesn't have anything to do with the issue here.  And in fact,

25    the northern district of the Michigan case illustrates the

point.  Right?  You called him a doofus, but maybe that doofus

is in our class.  In order to find out we need to go through

each and every case to determine whether credibility is at

issue or not.

THE COURT:  I agree with you and I disagree with

counsel that that is going to be very clear on its face as you

go through these cases.  You know, you paint a picture of, oh,

well, we are going to be able to pick up the investigative

report and determine whether credibility was an issue.  It's

not going to be that simple.  I know that and I think you

probably do, too.  And so I am firmly convinced that the

Defendants' attempt to strike the class at an early point at

this point before diving into the rest of it makes some sense

to me.

And I tell you honestly, that is not my general

practice.  In fact, I don't know that I have ever done that

before.  I am always pushing that off towards the end.  But

here I just think it is -- the Plaintiffs have such an uphill

battle to establish a class that I think we should look at that

hard and fast right off the bat.

Then the next question is, Mr. Baughman, what is your

anticipated motion with regard to the federal claims?

MR. BAUGHMAN:  Qualified immunity primarily, Your

Honor.  And since we last -- when we last met Your Honor, Your

Honor was of the view that perhaps there was a factual question

1    with regard to qualified immunity, but I respectfully

2    disagreed, and I heard where Your Honor has coming from.   In

3    fact, since then there has been some developments in the law.

4    We have Judge Quist finding that Baum was a new rule of law.

5         THE COURT:  Yes.  He did.

6         MR. BAUGHMAN:  And therefore, he applied qualified

7    immunity.  And since we submitted our plea motion conference we

8    have the United States Court of Appeals for the 1st Circuit

9    saying, I don't think Baum was right.  So we also have a

10   circuit split.  So if there is a circuit split I don't see any

11   way that this could have been a clearly established right.

12        And again, we have a question of whether they are

13   seeking damages or not.  If they are seeking damages as part of

14   the class I think it's critical to decide that qualified

15   immunity issue now.  And even if it's not a class issue, it is

16   a much different claim if all the damages claims are out.

17        And as to the two individuals we are just talking

18   about injunctive relief, so we'd ask for the opportunity to

19   brief the federal questions, as well, primarily on the issue of

20   qualified immunity.

21        THE COURT:  One second.

22        MR. BERNSTEIN:  Sure.

23        THE COURT:  One second.  Is there a difference in your

24   planned motions in these two cases, is there any substantive

25   difference in your how you intend to pursue the motion?

1    MR. BAUGHMAN:  I am not sure I understand the

2    question, Your Honor.  I apologize.

3    THE COURT:  Well, we've got two cases here.

4    MR. BAUGHMAN:  Oh, I see.

5    THE COURT:  And the real question is going to be it's

6    really an issue of the briefing.

7    MR. BAUGHMAN:  Right.

8    THE COURT:  Are we going to combine them in some way?

9    We have to be very careful not to mix apples and oranges,

10   obviously, but is it your intention that the two motions will

11   be essentially identical?

12   MR. BAUGHMAN:  So the one thing I haven't mentioned is

13   the Title 9 claims.

14   THE COURT:  Right.

15   MR. BAUGHMAN:  Which we also think there is a good

16   basis to dismiss.  And again, when we were last with Your

17   Honor, I think you raised some questions as to whether that's a

18   factual issue that could be decided on a motion to dismiss.  We

19   have Judge Quist dismissing the Title 9 claims.

20   THE COURT:  Right.

21   MR. BAUGHMAN:  And he relies on -- he relies on a 2019

22   6th Circuit case which on a motion to dismiss dismissed the

23   Title 9 claims.

24   So the reason I raise that is I think that the

25   arguments in the Title 9 issues might be slightly different,

1    but I actually think they are pretty similar in both cases,

2    which is that all they allege is that there is this pressure

3    from the federal government that is temporally removed from

4    these cases and they don't, as required by Baum and all the

5    other cases, have any individualized arguments as to these

6    particular hearings as to why there was bias.

7            So if Your Honor's question is could we combine all of

8    that into one brief, I think we could.  I would ask for some

9    level of flexibility on the page limits, but I think the most

10   efficient way would be to combine the two motions into one

11   brief.

12           THE COURT:  We'll talk about that in a bit.

13           MR. BERNSTEIN:  Judge, first, everything you

14   articulated in saying this is the first time you might have

15   done it really screams of why we have to have some limited

16   discovery beforehand, because they are going to make a motion

17   and they have all the information.  Not once has counsel said

18   look, Judge, this is only 75 people.  This is 500 people.  They

19   have the numbers.  They haven't said one word.  They sat here

20   and haven't said one word of why it's going to be so difficult.

21           And Your Honor, I do respectfully disagree that we

22   have these investigative reports.  We won't be able to tell if

23   it's -- if they admitted to it.  It would be right and front

24   center that they admitted to it.

25           THE COURT:  You are never going to find another

1    Defendant who did what the Northern Michigan Defendant did.

2    Let's be -- you know, that was really extraordinary.  And so

3    you know, your attempt to make it sound as though it's going to

4    be very simple to go through these investigative reports and

5    determine whether there was a credibility question or what the

6    underlying evidence was and so forth, it just isn't so.

7             MR. BERNSTEIN:  But Judge, respectfully you are

8    cutting off our legs to be able to establish it to you.  You

9    are saying, make a motion and we are left that they have all

10   the information.  What more can we tell you in the papers that

11   we haven't discussed today?  That's my point is we -- that just

12   screams of why we need limited discovery to be able to explain

13   to you how we can get to this class.  Judge, otherwise, I don't

14   know -- you are really truly just cutting off our legs and you

15   are not letting us get to -- you are not letting us establish

16   to you our class.

17            And I am going to let Kevin just jump onto that.  And

18   if I may, Your Honor, after he does that if I can just jump

19   back and address the other motions that they want to try to

20   make again so if it's easy just for continuity.

21            THE COURT:  Sure.

22            MR. STOOPS:  Your Honor, what we often do in these are

23   just have some kind of agreed upon streamlined discovery plan.

24   And I think Stuart said we don't have any clue if this case has

25   got 50,000 people or 50 people in it.  I suspect it's only a

1    few hundred, and that's what we put in our papers from their

2    statistics, but I am not seeing the prejudice to them of

3    allowing us to try to make out our class.  We are going to go

4    through several months in this motion to strike posture where

5    we could have been doing the underlying discovery to bring

6    forth or motion for class certification.  And if you are

7    correct we won't see another Defendant like, or another student

8    like we saw in Judge Quist's case where he admitted it, and

9    that's why he shouldn't have got a hearing or a credibility

10   determination.  That goes directly in line with the 6th Circuit

11   observation that credibility is always at issue, which would

12   make the typicality and commonality of our case easy.

13        We frankly see this as an easy case to certify and we

14   are directly contrary to Defendant on that, but we have to have

15   an opportunity to show that to you.

16        MR. BERNSTEIN:  And Your Honor, then, just Judge

17   Quist's decision and what you say really does not -- in fact, I

18   think strengthens our position that they should not be able to

19   make a motion like you decided a couple of months ago.  This

20   decision clearly -- on the qualified immunity clearly, and it's

21   throughout the decision, is based upon the fact that this

22   individual admitted to it.  And --

23        THE COURT:  That's not true.  That's -- I mean, that

24   is part of it, but that is not true.  His decision -- Judge

25   Quist's decision -- and Paul, we are talking about Doe versus

1    Northern Michigan University.  I am not sure what the cite is.

2    It's a 2019 case.

3           MR. BERNSTEIN:  Judge, you want the cite?  It's 2019

4    West Law 2269721.

5           THE COURT:  His decision is based on a lot more than

6    that, and particularly on the temporal issue of the right not

7    being firmly established at the time.  So you misstate the

8    extent and the strength of the holding in that case.

9           MR. BERNSTEIN:  I'm sorry, Your Honor.  I am not going

10   to debate it with you.  I think the temporal issue of it not

11   being decided has to do with the fact that the Defendant -- the

12   Doe in this case admitted to it.  And that's what the 6th

13   Circuit's Long cases have said when there is -- and it goes

14   back to the Baum case, when someone admits to it there is no

15   need for that.  So I really believe that's the underpinning of

16   Judge Quist's decision.  He says it over and over.

17          THE COURT:  Well, I disagree with you.  And as I said,

18   I really am strongly of the opinion that we need to go ahead

19   with these -- with the Defendant's proposals to make a motion

20   based on the pleadings as they are.  Certainly we have

21   Plaintiffs who are well schooled in proper pleading under all

22   of these Supreme Court cases that have come down in the last 10

23   years or so.  And there is no reason in the world why if the

24   Defense is correct that we cannot decide the issue of class

25   certification, as well as the rest of it.

1       Rita, what questions do you have?

2       LAW CLERK:  I don't have any questions until you get

3  to the briefing schedule.

4       THE COURT:  Okay.

5       LAW CLERK:  Thank you, though.

6       MR. BERNSTEIN:  I'm sorry.

7       THE COURT:  Go ahead.

8       MR. BERNSTEIN:  I'll wait for your decision.  Are you

9  going -- I guess in a sense overruling yourself with regards to

10  the other claims or just to the class?

11       THE COURT:  Well, as to the whole thing.  You know, I

12  have to tell you that Judge Quist's opinion is very persuasive

13  to me, and I think it applies very strongly in this case, and I

14  think that if by placing your emphasis solely on the

15  Defendants' admissions in that Doe case, you really are missing

16  or overlooking or not carefully reading what Judge Quist said

17  throughout the opinion.  I think qualified immunity is much

18  more at play than I anticipated, and I think it should be a

19  topic for the Defense to proceed on its motion.

20       The real question is how -- and Rita, here is where I

21  need your help.

22       LAW CLERK:  Okay.

23       THE COURT:  How are we going to organize these

24  motions?

25       LAW CLERK:  My preference is actually to separate

1    motions.  One in each case.  I think they probably will come in

2    fairly identical, but I don't see a single opinion in both

3    cases.

4              THE COURT:  Okay.

5              LAW CLERK:  So I think having two separate motions.

6    And two separate opinions is a little cleaner.  And also I am

7    not sure who to look at.  The Kroll Defendants --

8              MR. SMITH:  Here.

9              LAW CLERK:  -- have a state argument to take on in one

10   of the cases, which will keep one opinion a little bit.

11             THE COURT:  That's in the 1413 case, I think.

12             MR. BERNSTEIN:  Judge, are you allowing them to make a

13   motion in that case?

14             THE COURT:  Yes.

15             MR. BERNSTEIN:  There is nothing different in their

16   cases.  Are we allowing them to make a motion also?

17             LAW CLERK:  The Kroll Defendants had their own PMC

18   request with a smaller state actor argument.

19             MR. BERNSTEIN:  Right.

20             LAW CLERK:  That was represented by MSU.

21             MR. BERNSTEIN:  Right, but I don't know that anything

22   that's transpired that's caused Your Honor to change that

23   decision to allow them to make a motion.

24             THE COURT:  I don't think we really talked about that

25   last time, did we?

1    LAW CLERK:  Not yet.  And if I understand his argument

2    correctly, and I am putting words in your mouths, it's on the

3    1983 causes facts.  So it's still the federal counts whether or

4    not they are a state actor under 1983.

5    MR. SMITH:  The federal counts.

6    LAW CLERK:  Yes.  Thank you.  1 and 3 is what we are

7    talking about.

8    THE COURT:  Right.  I don't think we have talked

9    about.

10   LAW CLERK:  Not yet, no.  It's just part of that odd

11   numbered case, correct.  That was the Supreme Court case.

12   THE COURT:  Yes.

13   MR. KONCIUS:  Brian Koncius on behalf of Plaintiffs in

14   the 1413 matter.  I thought we had addressed it last time we

15   were all together prior to this class, and just, I think that's

16   what Stuart was asking.  Not to -- not having addressed it

17   today but the last time we would have gotten together.

18   MR. BERNSTEIN:  Right.  Thank you, Brian.

19   MR. KONCIUS:  I'm sorry if that was confusing.  I

20   wanted to make sure we are all on the same page to that, and

21   Stuart was struggling that last time it was stated that nobody

22   was going to bring these early motions.  I know we've changed

23   course since with regard to MSU as Defendants because of Judge

24   Quist's decision at this point, but with regard to Kroll, I

25   don't think there is anything that has changed in the law with

1  regard to the request from the last date.

2       LAW CLERK:  I don't think anything has changed in the

3  law, but our order was denying them without prejudice so I

4  don't know if there is anything that's tying us to some

5  decision.

6       MR. BERNSTEIN:  No.  I was just inquiring as to

7  whether that they are being granted permission now to also make

8  it?  That was my question.

9       LAW CLERK:  Do you want my copy then, Judge?  That was

10  this.

11       THE COURT:  That's the Tarkanian case?

12       LAW CLERK:  Correct.

13       MR. BERNSTEIN:  Yes, Your Honor.

14       THE COURT:  Well, I am not averse to changing my mind,

15  and I think our discussion here today sort of shows that.  I am

16  not sure I was right last time, and so I do think that we are

17  going to go ahead.  We are going to let the Kroll Defendants

18  file, which is going to be a pretty truncated motion and

19  briefing on the issue involving the independent investigator.

20       I didn't realize that Tarkanian was such an old case.

21  But in any event, Rita, why don't you go ahead with regard to

22  how you see this scheduling playing out.

23       LAW CLERK:  Sure.  The draft briefing schedule we

24  discussed in 1413 starting with MSU's motion and brief due in

25  28 days, which I think is October 28.  We are not fans of the

1    word limit in chambers.  We are the old fashion page limit.  So

2    we were contemplating a limit of 25 pages for the initial

3    position with any concurrents by the Kroll Defendants within

4    seven days.  I know in your PMC request you adopted and

5    incorporated their argument, and that's what I was going off

6    of.

7                 MR. SMITH:  That's fine.

8                 LAW CLERK:  Plaintiff's response, also 25 pages within

9    28 days.  A reply, if any, but we really like replies --

10                MR. BAUGHMAN:  So do I.

11                LAW CLERK:  -- limited to 10 pages within 14 days of

12   service of the response.  Yet replies are usually where the

13   good stuff is.  I threw out October 15 as starting the Kroll

14   Defendants' motion bundle, then limited to 10 pages because

15   it's that narrow state actor issue on just two counts.

16                Plaintiff's response limited to 10 pages, but still

17   the 28-day response period, and then the Kroll Defendants'

18   reply, brace yourself, limited to three measly pages due within

19   14 days of service of the response.

20                So two motion bundles tracking in that case, but it

21   seemed that the majority of the issues were presented by MSU

22   with the concurrence and then your small single issue brief

23   afterwards.

24                MR. BERNSTEIN:  Your Honor, may I --

25                MR. KONCIUS:  I was just going to confirm the date on

1    the Kroll Defendants.  You said starting or to be filed on the

2    15th?

3                 LAW CLERK:  To be served on October 15, but I am not

4    sure we got into this last time because we didn't get up to a

5    briefing schedule, but our preference is that you handle the

6    serving behind the scenes.  The proof of service should be

7    filed on ECF, but the actual motion papers themselves are not

8    filed on ECF until everything has been served.

9                 MR. KONCIUS:  Until all papers have been served, they

10   are all served in chambers at the same time.

11                LAW CLERK:  Our clock doesn't start until we have

12   everything we need is the idea.

13                THE COURT:  Remember, when everything has been

14   exchanged, then it becomes the moving party's obligation to

15   serve chambers with a hard copy and a three-ring binder if

16   possible.

17                MR. SMITH:  I'm sorry.  You mentioned two counts.  I

18   believe there is three state actor counts alleged.

19                LAW CLERK:  You have just Count 1 and 3.

20                MR. SMITH:  I believe it's 1, 3 and 5.

21                LAW CLERK:  But 5 is a state law.

22                MR. KONCIUS:  Which won't be briefed.

23                MR. SMITH:  Okay.

24                MR. KONCIUS:  Sorry.  Sorry.

25                MR. BERNSTEIN:  Your Honor?

1    THE COURT:  Sure.

2    MR. BERNSTEIN:  Is there any -- is there any wiggle

3    room with this scheduling?  And the only reason I say that is I

4    just got hit with a 1st Circuit expedited appeal, and the month

5    of October at least is a religious holiday, and so this is all

6    I was wondering if there is any wiggle room with or should I

7    just wait and make the request after.

8    THE COURT:  No.  I am always sympathetic to that.  We

9    are so swamped right now.  It really makes no difference

10   anyway.  How do you want to do that, Rita?

11   LAW CLERK:  Bump everything out a week.

12   THE COURT:  How much?

13   MR. STOOPS:  If I could just suggest something?  Give

14   45 days for you guys, then 45 days for our response.  So bump

15   everything out one month.

16   THE COURT:  That's fine.  That's fine.

17   LAW CLERK:  Okay.

18   MR. STOOPS:  So we have -- that would put us

19   approximately into December.

20   MR. BERNSTEIN:  Right.

21   MR. KONCIUS:  Yeah.

22   MR. BERNSTEIN:  All right.  So they have 45 days from

23   today, is that where we counted the 30 days?

24   LAW CLERK:  I was counting 28 days from today.

25   MR. BERNSTEIN:  From today.  So it's 45 days from

1    today?

2              LAW CLERK:  Yup.

3              MR. BERNSTEIN:  And then Kroll has 45 days from a week

4    from today?

5              LAW CLERK:  Correct.

6              MR. BAUGHMAN:  Your Honor, I am going to ask one

7    followup question to circle back from where we began.

8              THE COURT:  Sure.

9              MR. BAUGHMAN:  Assuming that I keep my brief within

10   the page limit, may I have two paragraphs to address the 11th

11   Amendment issue on the state law claim?

12             THE COURT:  No.  And you don't even -- you don't have

13   to use all 25 pages.

14             MR. BAUGHMAN:  I understand.

15             THE COURT:  I tell lawyers this all the time and they

16   never take me up on it.  I don't understand it.

17             MR. BAUGHMAN:  All right.  I'll try to convince

18   Stuart.

19             MR. KONCIUS:  I think you just wanted the reply

20   really.

21             LAW CLERK:  That's where it finally gets good in my

22   opinion.  So I think we are looking at October 25, 45 days from

23   today if that helps.

24             MR. BAUGHMAN:  Okay.

25             MR. BERNSTEIN:  And we have 45 days, and then they

1      have --

2                MR. KONCIUS:  Just send in the reply.

3                THE COURT:  Is there anything else we have?

4                MR. BERNSTEIN:  I'm sorry.  And so then we have 45

5      days to reply to MSU and 45 days to reply to Kroll, which is a

6      week after.  And then how long is their -- and their reply is

7      due 14 days after that?

8                MR. KONCIUS:  Yeah.

9                THE COURT:  That's correct.

10               MR. BAUGHMAN:  That should be fine.

11               MR. BERSTEIN:  If I need additional time, I don't

12     think I will, but I will talk to you and we'll come back.

13               MR. BAUGHMAN:  And Your Honor, oral argument is upon

14     your Your Honor's direction?

15               THE COURT:  It will be unlikely.

16               MR. BAUGHMAN:  Okay.

17               THE COURT:  I usually don't.  And especially -- I

18     especially find -- and this is kind of a carryover from my days

19     on the Michigan Court of Appeals.  I find that where we have

20     good lawyers you don't need oral argument, and when we have bad

21     lawyers they don't help.

22               MR. BERNSTEIN:  You don't want it.

23               THE COURT:  So it's often just an exercise in letting

24     the lawyers get up there and talk.  Sometimes I have it.

25     Sometimes there are questions that remain, but I think that the

1    quality of the legal talent we have here will tell me what I

2    need to know in writing and make it possible for me to decide

3    without an oral argument.

4              LAW CLERK:  Would you like a similar schedule in the

5    1430 case?

6              MR. KONCIUS:  I am going to have to go back and look

7    and see if you ever allowed oral argument from me, Judge.

8              LAW CLERK:  Doubtful.

9              MR. KONCIUS:  I am just going to say.  I normally

10   don't want to say if you have.

11             MR. MIHELICK:  I know I haven't probably three or four

12   times.

13             LAW CLERK:  The orders will also note that your answer

14   deadlines are after the Court decides the motions.

15             THE COURT:  Right.

16             MR. BERNSTEIN:  Okay.

17             THE COURT:  Any other questions, comments, concerns?

18             MR. MIHELICK:  So it's the exact same briefing

19   schedule in the 1430 case?

20             LAW CLERK:  Minus the Kroll Defendants.

21             MR. MIHELICK:  Okay.

22             THE COURT:  And this will all be in an order that goes

23   out some time in the next day or two.

24             MR. BERNSTEIN:  Thank you, Your Honor.

25             MR. BAUGHMAN:  Thank you for your time, Your Honor.

1        (Proceeding concluded, 3:15 p.m.)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

REPORTER'S CERTIFICATE

I, Paul G. Brandell, Official Court Reporter for the United States District Court for the Western District of Michigan, appointed pursuant to the provisions of Title 28, United States Code, Section 753, do hereby certify that the foregoing is a full, true and correct transcript of the proceedings had in the within entitled and numbered cause on the date hereinbefore set forth; and I do further certify that the foregoing transcript has been prepared by me or under my direction.


/s/ Paul G. Brandell

Paul G. Brandell, CSR-4552, RPR

U.S. District Court Reporter

399 Federal Building

Grand Rapids, Michigan  49503