IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| JOHN DOE, | : | Civil Action No. 1:18-cv-1413 |
| Plaintiff, | : | |
| | : | Hon. Janet T. Neff |
| v. | : | |
| | : | |
| MICHIGAN STATE UNIVERSITY, | : | |
| MICHIGAN STATE UNIVERSITY BOARD | : | |
| OF TRUSTEES, JOHN ENGLER, individually and | : | |
| as agent for Michigan State University, KROLL | : | |
| ASSOCIATES, INC., as agent for Michigan State | : | |
| University, MARK EHLERS, individually and as | : | |
| agent for Michigan State University, KENDRA | : | |
| WALDSITH, individually and as agent for | : | |
| Michigan State University, ANDE DUROJAIYE, | : | |
| individually and as agent for Michigan State | : | |
| University, RICK SHAFER, individually and as | : | |
| agent for Michigan State University, and DENISE | : | |
| MAYBANK, individually and as agent for | : | |
| Michigan State University, | : | |
| | : | |
| Defendants. | : | |

**PLAINTIFF JOHN DOE'S RESPONSE BRIEF IN OPPOSITION TO MICHIGAN
STATE UNIVERSITY DEFENDANTS'
<u>MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................iii-viii

PRELIMINARY STATEMENT .......................................................................1

STATEMENT OF FACTS ............................................................................2

ARGUMENT .........................................................................................4

    I. Legal Standard .............................................................................4

    II. Plaintiff Sufficiently Alleges Title IX Claims......................................5

        A. Plaintiff has Fully and Adequately Pleaded Erroneous Outcome..........5

        B. Plaintiff has Fully and Adequately Pleaded Selective Enforcement.......8

    III. Defendants' Motion to Dismiss the Constitutional Claims is Groundless ........9

        A. The Eleventh Amendment Does Not Protect the Individual
           Defendants ...........................................................................10

        B. Defendants' Qualified Immunity Defense is Premature and Fails as a
           Matter of Law ........................................................................11

        C. Plaintiff Sufficiently Alleges Involvement of the Individual
           Defendants ...........................................................................14

    IV. Defendants' Motion to Strike the Class Claims Is Premature, Rests on Factual
        Speculation Wholly Inappropriate in a Rule(12)(b)(6) Motion, and
        Repeatedly Misrepresents the Law ...............................................16

        A. The Class Claim is Straightforward, Will Avoid Wasteful, Duplicative
           Litigation, and Will Prevent Many Class Members From Loosing
           Their Rights ..........................................................................16

        B. Defendants' Rule 12(b0(6) Motion to Strike Premature.....................18

        C. Defendants Bear a High Burden of Proof ...............................18

        D. Defendants' Arguments for Striking the Class Claims Rest on
           Pure Factual Speculation and Repeated Misrepresentations of Law ....19

i

i. Defendants Challenge Only Commonality .................................19

ii. Commonality is a "Low Hurdle" and Is Manisfestly Satisfied
Here ............................................................................................20

iii. Defendants' "Credibility" Argument Relies on Factual
Speculation and Misrepresents the Law ...................................21

iv. Defendants' "Prejudice" Argument Misrepresents the Law
and Is Speculative ....................................................................23

v. Defendants' Kitchen-Sink "Other Reasons" Are All Without
Merit..........................................................................................25

CONCLUSION ....................................................................................................25

# TABLE OF AUTHORITIES

**Cases**                                                                                              **Page**

*Advanced Rehab & Med., P.C. v. Amedysis Holding, LLC,*
    2019 WL 4145239 (W.D. Tenn. Aug. 30, 2019)....................................................23

Anda v. Roosen Varchetti & Olivier, PLLC,
    2016 7157414 (W.D. Mich. Oct. 31, 2016) .........................................................24

*Arista Records, LLC v. Doe 3,*
    604 F.3d 110 (2d Cir. 2010)..................................................................................5

*Arlington Video Prods. V. Fifth Third Bancorp,*
    515 F. Appx. 426 (6th Cir. 2013)........................................................................23

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)............................................................................................14

*Bangura v. Hansen,*
    434 F.3d 487 (6th Cir. 2006) ...............................................................................4

*Bell Atl. Corp. v. Twombly,*
    550 U.S. (2007)....................................................................................................4

*Cates v. Cooper Tire and Rubber Co.,*
    253 F.R.D. 422 (N.D. Ohio 2008) .......................................................................24

*Cerjanec v. FCA US, LLC,*
    No. 17-CV-10619, 2018 WL 3729063 (E.D. Mich. Aug. 6, 2018).....................18

Cerjanec v. FCA US, LLC,
    No. 17-CV-10619, 2018 WL 7152556 (E.D. Mich. Sept. 4, 2018).....................18

*Cf. Cannon v. Bernstein,*
    2013 WL 5449087 (E.D. Mich. 2013)................................................................10

*CNH Am. LLC v. Int'l Union, United Auto., Aerospace & Agr. Implement*
*Workers of Am. (UAW),*
    645 F.3d 785 (6th Cir. 2011) ...............................................................................25

*Cunningham v. Cornell Univ.,*
    2019 WL 275827 (S.D.N.Y. Jan. 22, 2019) .......................................................20

*DiLuzio v. Vill. of Yorkville, Ohio,*
     796 F.3d 604 (6th Cir. 2015) .............................................................................12

*Doe v. Amherst Coll.,*
     238 F.Supp.3d 195 (D. Mass. 2017) .................................................................7

*Doe v. Baum,*
     903 F.3d 575 (6th Cir. 2018) ..................................................................... *passim*

*Doe v. Baum,*
     2019 WL 4809438 (E.D. Mich. 2019) ....................................................... *passim*

*Doe v. Columbia Univ.,*
     831 F.3d 46 (2d Cir. 2016).................................................................................7

*Doe v. Cummins,*
     662 F. Appx. 437 (6th Cir. 2016)..............................................................10,14

*Doe v. Miami Univ.,*
     882 F.3d 579 (6th Cir. 2018) ..................................................................... *passim*

*Doe v. Northern Michigan University,*
     393 F. Supp. 3d 683 (W.D. Mich. 2019) ......................................................12,13

*Doe v. Pennsylvania State Univ.,*
     No. 17-CV-01315, 2018 WL 317934 (M.D. Pa. Jan. 8, 2018)............................15

*Doe v. Purdue Univ.,*
     928 F.3d 652 (7th Cir. 2019) ............................................................................10

*Doe v. Rollins Coll.,*
     352 F. Supp. 3d 1205 (M.D. Fla. 2019)..............................................................7

*Doe v. Trs. Univ. Pennsylvania,*
     270 F.Supp. 3d 799 (E.D. Pa. 2017) ..................................................................7

*Doe v. University of Cincinnati,*
     872 F.3d 393 (6th Cir. 2017) ..................................................................... *passim*

*Doe v. Univ. of Colorado,*
     255 F. Supp. 3d 1064 (D. Colo. 2017).............................................................10

*Doe v. University of Dayton,*
     766 Fed. Appx. 275 (6th Cir. 2019)....................................................................8

*Dozier v. Sun Life Assur. Co. of Can.,*
    466 F.3d 532 (6th Cir. 2006) ................................................................14

*Eliason v. Gentek Bldg. Prods.,*
    2011 WL 3704823 (N.D. Ohio Aug. 23, 2011) ....................................18

*Endres v. Northeast Ohio Med. Univ.,*
    938 F.3d 281 (6th Cir. 2019) ................................................................11

*Evans-Marshall v. Bd. of Educ. Of Tipp City Exempted Vill. Sch. Dist.,*
    428 F.3d 223 (6th Cir. 2005) ................................................................11

*Ex Parte Young,*
    209 U.S. 123 (1908)................................................................................10

*Faktor v. Lifestyle Lift,*
    2009 WL 1565954 (N.D. Ohio June 3, 2009)......................................18

*Flint v. Dennison,*
    488 F.3d 816 (9th Cir. 2007) ................................................................10

*Gischel v. Univ. of Cincinnati,*
    2018 WL 9944971 (S.D. Ohio Jun. 26, 2018)....................................8,9

*Gooch v. Life Investors Ins. Co. of Am.,*
    672 F.3d 402 (6th Cir. 2012) ................................................................19

*Goss v. Lopez,*
    419 U.S. 565 (1975)................................................................................17

*Graham v. Mukasey,*
    519 F.3d 546 (6th Cir. 2008) ................................................................24

*Harper v. Va. Dep't of Taxation,*
    509 U.S. 86 (1993)................................................................................12

*Heyne v. Metro. Nashville Pub. Sch.,*
    655 F.3d 556 (6th Cir. 2011) ................................................................16

*In re Aredia & Zometra Prods. Liab. Litig.,*
    2007 WL 3012972 (M.D. Tenn. 2007)................................................20

*In re Darvocet, Darvon, & Propoxyphene Products Liab. Litig.,*
    756 F.3d 917 (6th Cor. 2014)..................................................................5

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,*
    827 F.3d 223 (2d Cir. 2016)................................................................19

*In re Welding Fume Prods. Liab. Litig.,*
    245 F.R.D. 279 (N.D. Ohio 2007) .......................................................20

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.,*
    772 F.3d 838 (6th Cir. 2013) ..............................................................20

*In re Whirlpool Corp. Front-Loading Washer Prods. Litig.,*
    302 F.R.D. 448 (N.D. Ohio 2014) .......................................................25

*Jacobs v. City of Chicago,*
    215 F.3d 758 (7th Cir. 2000) ..............................................................11

*Jimenez v. Allstate Indem. Co.,*
    No. 07-14494, 2010 WL 3623176 (E.D. Mich. Sept. 15, 2010)...........19

*Kanuszewski v. Mich, Dep't of Health and Human Servs.,*
    927 F. 3d 396 (6th Cir. 2019) .............................................................11

*Kohen v. Pacific Inv. Mgmt. Co.,*
    571 F.3d 672 (7th Cir. 2009) ..............................................................22

*Maben v. Thelen,*
    887 F.3d 252 (6th Cir. 2018) ..............................................................11

*Mendoza-Garcia v. Barr,*
    918 F.3d 498 (6th Cir. 2019) ..............................................................24

*Mills v. Barnard,*
    869 F.3d 473 (6th Cir. 2017) ..............................................................11

*Monroe Ct. Employees Ret. Sys. v. Southern Co.,*
    332 F.R.D. 370 (N.D. Ga. 2019)..........................................................20

*Newsome v. Batavia Local Sch. Dist.,*
    842 F.2d 920 (6th Cir. 1988) .........................................................24,25

*Olden v. LaFarge Corp.,*
    203 F.R.D. 254 (E.D. Mich. 2001) ......................................................24

*Perez v. First Am. Title Ins. Co.,*
    2009 WL 2486003 (D. Ariz. Aug. 12, 2009)........................................23

*Pervis v. La Marque Ind. Sch. Dist.,*
    466 F.2d 1054 (5th Cir. 1972) ..............................................................17

*Phillips v. Roane County,*
    534 F.3d 531 (6th Cir. 2008) ................................................................15

*Phipps v. Wal-Mart Stores,*
    2016 WL 10649206 (M.D. Tenn. 2016) ..............................................18

*Pilgrim v. Universal Health Card, LLC,*
    660 F.3d 943 (6th Cir. 2011) ................................................................19

*Piphus v. Carey,*
    545 F.2d 30 (7th Cir. 1976) ..................................................................17

*Prater v. Ohio Educ. Ass'n,*
    2018 WL 2566364 (S.D. Ohio 2008)....................................................20

*Reeb v. Ohio Dep't of Rehab. & Corrections,*
    435 F.3d 639 (6th Cir. 2006) ...........................................................17,18

*Rikos v. Proctor & Gamble,*
    799 F.3d 497 (6th Cir. 2015) .........................................................20,21,22

*Sako v. Gonzalez,*
    434 F.3d 857 (6ʰ Cir. 2006)............................................................24,25

*Santiago v. Warmister Tp.,*
    629 F. 3d 121 (3d Cir. 2010)................................................................14

*Schultz v. Hansen,*
    28 F. Appx. 513 (6th Cir. 2002)...........................................................12

*Schwebel Baking Co. v. Firstenergy Solutions Corp.,*
    2018 WL 1419477 (N.D. Ohio 2018)...................................................18

*Shanehchian v. Macy's, Inc.,*
    2011 WL 883659 (S.D. Ohio Mar. 10, 2011).......................................24

*Sheehee v. Luttrell,*
    199 F.3d 295 (6th Cir. 1999) ...............................................................15

*Shepard v. Irving,*
    77 F. App'x 615 (4th Cir. 2003) ..........................................................10

*Velez-Santiago v. State Univ. of N.Y. at Stony Brook,*
    170 A.D.3d 1182 (N.Y. App. Div. 2d Dept. 2019)................................17

*Walmart Stores v. Dukes,*
    564 U.S. 338 (2011)..............................................................20,21,22

*Warth v. Seldin,*
    422 U.S. 490 (1975)........................................................................22

*Wells v. Xavier Univ.,*
    7 F.Supp.3d 746 (S.D. Ohio 2014) ......................................................6

*Wesley v. Campbell,*
    779 F.3d 421 (6th Cir. 2015) ............................................................11

*Wood v. Dow Chem, Co.,*
    72 F. Supp. 3d 777 (E.D. Mich. 2014)..................................................5

*Young v. Nationwide Mut. Ins. Co.,*
    693 F.3d 532 (6th Cir. 2012) ......................................................22,23,24

*Yusuf v. Vassar Coll.,*
    35 F.3d 709 (2d Cir. 1994)................................................................5

## Statutes and Rules

20 U.S.C. § 1681(a) .............................................................................5

42 U.S.C. § 1983.......................................................................... *passim*

## PRELIMINARY STATEMENT

Denied a hearing, denied any opportunity to cross-examine his accuser, his guilt decided by gender-biased investigators who served as prosecutor, judge, and jury, Plaintiff John Doe, a student at Michigan State University ("MSU"), was suspended for two years for a sexual assault he did not commit. Because this process was infected at every step by sex-based bias, MSU violated Title IX. Because they violated clearly established Due Process rights, the individual Defendants are liable to Plaintiff under 42 U.S.C. § 1983.

But Plaintiff is not the only casualty of MSU's unconstitutional Title IX procedures. On behalf of himself and all other similarly situated MSU students (present and former), Plaintiff seeks a class-wide injunction ordering MSU to vacate unconstitutional findings of guilt, to remove such findings from academic and/or disciplinary records, and to refrain from disseminating such findings to any third parties unless and until such time as MSU has established a student's guilt through constitutional procedures respecting Due Process.

This class claim is unusually straightforward because MSU's hearing-less, cross-examination-less Title IX procedures were almost identical to those already found unconstitutional by the Sixth Circuit. There is absolutely no reason to require each student whose constitutional rights were violated to sue individually for a re-declaration of what the Sixth Circuit has already made clear or to obtain the injunctive relief to which all are entitled under long-standing law. Requiring MSU to vacate unconstitutional findings of guilt will not declare anyone innocent. It will not bar MSU from re-trying anyone it chooses to. It will simply eliminate a continuing constitutional violation that threatens potential irreparable harm to livelihood and reputation.

Defendants move to dismiss Plaintiff's complaint, including striking the class claims. Defendants primarily rely on misreadings and misrepresentations of the applicable law,

substantive disagreements with the merits of Plaintiff's claims, and a failure to apply the correct standard on a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6). These arguments are unavailing, and Defendants' motion should be denied in its entirety.

## STATEMENT OF FACTS

The facts of this case are fully set forth in the First Amended Complaint (hereinafter, "FAC"), ECF No. 41, incorporated herein by reference. The pertinent facts are as follows:

Plaintiff John Doe matriculated to MSU in Fall 2016. Prior to the events underlying this action, Plaintiff had no disciplinary record. FAC ¶¶ 74, 76; PageID.441. Plaintiff and Jane Roe met and became friends in December 2017. FAC ¶¶ 78-81; PageID.441-442. On or about February 23, 2018, Roe came to Plaintiff's fraternity house after a "Beer Olympics" party in which Plaintiff had participated. Roe was sober at the time; Plaintiff had consumed beer and whiskey. FAC ¶¶ 82-84; PageID.442.

At the fraternity house, Roe initiated sexual activity with Plaintiff, kissing him and suggesting they move to a bedroom together. The two kissed and touched each other over and under their clothing. FAC ¶¶ 85-91; PageID.442-443. Roe stated that she did not want to have sexual intercourse, and the two did not engage in such intercourse. After a while, Plaintiff invited Roe back to his own dorm room. Roe agreed. FAC ¶¶ 93-96; PageID. 443.

In Plaintiff's dorm room, the two continued kissing and touching each other and removed each other's clothing down to their underwear. FAC ¶¶ 95-97; PageID.443-444. Plaintiff asked Roe if she wanted to move into his lofted bed; she agreed. FAC ¶ 98; PageID.444. In Plaintiff's bed, the two continued to kiss and touch each other, nearly naked. Roe positioned herself on top of Plaintiff and began gyrating her body against Plaintiff's, simulating sexual intercourse. Roe then stopped, took off Plaintiff's underwear, and performed oral sex on Plaintiff. She did not ask

for Plaintiff's consent prior to doing so, although she was sober and knew Plaintiff was intoxicated. Roe then straddled Plaintiff and continued to simulate sexual intercourse; Plaintiff was fully naked and Roe was naked except for thong underwear.   FAC ¶¶ 100-103; PageID.444.   As the two continued to kiss and gyrate, with Roe on top of Plaintiff, her underwear moved out of place, and Plaintiff's erect penis inadvertently entered Roe's vagina by "an inch or less."   Plaintiff immediately withdrew and asked Roe "if everything was okay."   Roe affirmatively, verbally responded, "yes."   The two then resumed their prior activity, and the same thing occurred again. Plaintiff once more asked Roe if everything was okay, and once more she affirmatively responded "yes."  FAC ¶¶ 104-110; PageID.444-445.  The two then resumed, with Roe still on top, and there was a third brief moment of accidental penetration of "an inch or less."  Doe again asked Roe if she was okay.  This time, Roe did not respond, so Plaintiff immediately ceased all sexual activity. Roe then got up and left Plaintiff's room.  FAC ¶¶ 112-115; PageID.445.  Approximately one week later, Roe filed a Title IX complaint against Plaintiff.  FAC ¶ 124; PageID.446.

MSU then engaged in a biased, inadequate Title IX investigation, influenced by Plaintiff's gender.  By way of example, and not limitation: MSU employed gender-biased investigators who treated the investigation as a prosecution, not a neutral fact-finding mission; the investigators accepted Roe's version of events as true while refusing to address evidence undermining her credibility; the investigators inexplicably gave more credit to the female complainant's witnesses than to Plaintiff's witnesses; MSU denied Plaintiff a live hearing and any opportunity to cross-examine his accuser; and MSU imposed an unduly harsh sanction that failed to account for numerous mitigating factors.   FAC ¶¶ 293-294; PageID.473-478.   At the same time, MSU conducted no investigation whatsoever into whether the female student may have committed a policy violation, despite the fact that she initiated oral sex with Plaintiff without his consent, and

despite her admission that she was sober and Plaintiff had been drinking.  FAC ¶ 306; PageID.480-481.  MSU's decision to initiate the investigation, the erroneous outcome, and the severity of the punishment were all influenced by Plaintiff's gender, as MSU was under considerable pressure, both from the government and the media, to unequivocally support female complainants and punish male respondents to the greatest extent possible.  FAC ¶¶ 195-204, 295-304; PageID.457-458, 478-480.

As a result of this unconstitutional, gender-biased process, Plaintiff was found responsible for nonconsensual sexual intercourse and suspended for a term of two years in May 2018.  MSU upheld the finding and suspension in July 2018.  FAC ¶¶ 183, 186; PageID.455-456.

## ARGUMENT

### I.   Legal Standard

"[O]n a 12(b)(6) motion, the moving party bears the burden of demonstrating that the plaintiff failed to state a claim."  *Bangura v. Hansen*, 434 F.3d 487, 498 (6th Cir. 2006).  In *Doe v. Baum*, the Sixth Circuit summarized the "three-step process" used by courts when "evaluating a complaint's sufficiency":

> First, the court must accept all of the plaintiff's factual allegations as true. Second, the court must draw all reasonable inferences in the plaintiff's favor.  And third, the court must take all of those facts and inferences and determine whether they plausibly give rise to an entitlement to relief.  If it is at all plausible (beyond a wing and a prayer) that a plaintiff would succeed if he proved everything in his complaint, the case proceeds.

903 F.3d 575, 581 (6th Cir. 2018).

"[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citation omitted). Plaintiff "may plead on the basis of information and belief 'where the facts are peculiarly within the possession and control of the

defendant.'" *Wood v. Dow Chem. Co.*, 72 F. Supp. 3d 777, 783 (E.D. Mich. 2014) (quoting *Arista Records, LLC v. Doe 3,* 604 F.3d 110, 120 (2d Cir.2010)); *see also In re Darvocet, Darvon, & Propoxyphene Products Liab. Litig.*, 756 F.3d 917, 931 (6th Cir. 2014).

**I.      Plaintiff Sufficiently Alleges Title IX Claims**

Title IX, which prohibits discrimination on the basis of sex at schools receiving federal funding, 20 U.S.C. § 1681(a), "bars the imposition of university discipline where gender is a motivating factor." *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994). A student "attacking a university disciplinary proceeding on grounds of gender bias" can plead two different "theories of liability": "erroneous outcome" and "selective enforcement." *Doe v. Miami Univ.*, 882 F.3d 579, 589 (6th Cir. 2018) (citation omitted). Plaintiff adequately pleads both.

**A.      Plaintiff Has Fully and Adequately Pleaded Erroneous Outcome**

"To plead an erroneous-outcome claim, a plaintiff must allege: (1) facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding and (2) a 'particularized . . . causal connection between the flawed outcome and gender bias.'" *Miami Univ.*, 882 at 592 (citation omitted) (alteration in original). As the Sixth Circuit has made clear, where a Plaintiff alleges "that the university did not provide an opportunity for cross-examination even though credibility was at stake in his case, he has pled facts sufficient to cast some articulable doubt on the accuracy of the disciplinary proceeding's outcome," satisfying the first prong. *Baum*, 903 F.3d at 585–86. Such is the case here. FAC ¶¶ 5-6, 221, 256; PageID.425-426, 461, 467.[1] Indeed, Defendant MSU does not dispute that Plaintiff has satisfied this element of his claim, and

---

[1] Further, In *Doe v. Miami*, the district court held, and the Sixth Circuit agreed, that a plaintiff sufficiently alleged erroneous outcome by pointing to unresolved discrepancies in the complainant's story and unexplained discrepancies in the adjudicators' findings of fact. 882 F.3d at 592-93. Plaintiff alleges the same infirmities here. FAC ¶ 294, PageID.475-478.

thus the argument is waived.  Def.s' Br. 6-10.

Plaintiff also sufficiently pleads gender bias.  Specifically, Plaintiff alleges that there were numerous OCR investigations at MSU linked to MSU's alleged insufficient response to women's claims of sexual violence and insufficient punishment of men accused of sexual violence, and that two such investigations—which carried the risk of loss of millions of dollars in federal funding—were pending at the time that Plaintiff's case was being adjudicated (in fact, one such case was initiated the very same week that Roe filed her claim against Plaintiff).  FAC ¶¶ 195-200, 296-301; PageID.457-458, 478-479.  Plaintiff further alleges that his case was adjudicated during, and in the immediate wake of, the massive, highly publicized scandal involving MSU former employee Larry Nassar, who, while he was an employee of the university, sexually assaulted *over three hundred* "women and girls."  As a result of the Nassar scandal, MSU paid out a half-billion dollar settlement to the women and girls injured by Nassar under MSU's watch.  This publicity placed a huge spotlight on MSU and, specifically, on MSU's failure to protect women from sexual misconduct by men.  Moreover, it gave MSU an enormous financial and institutional incentive to presume all female complainants to be truthful and to punish accused men to the utmost.  FAC ¶¶ 201-204; PageID.458.

Plaintiff also alleges specific instances of gender bias during his proceeding, including: (i) the investigators overlooked blatant credibility issues with Roe's claims and reached factual conclusions at odds with the evidence, specifically to bolster Roe's claims; and (ii) the investigators uniformly granted more credibility and weight to the witnesses supporting the female student, and less credibility and weight to the witnesses supporting the male student.  FAC ¶ 294; PageID.475-478.  These are precisely the sort of facts the Sixth Circuit found sufficient in *Doe v. Baum*.  903 F.3d at 586-587 (denying motion to dismiss erroneous outcome claim).

6

Courts around the country have routinely held that similar allegations are sufficient to overcome a motion to dismiss a Title IX claim. *See e.g., Miami Univ.*, 882 F.3d at 593 (allegations "showing a potential pattern of gender-based decision-making"); *Wells v. Xavier Univ.*, 7 F.Supp.3d 746, 751 (S.D. Ohio 2014) (allegations suggested that university was "reacting against him[ ] as a male" in response to a Department of Education investigation); *Doe v. Columbia Univ.*, 831 F.3d 46, 57 (2d Cir. 2016) ("[I]t is entirely plausible that the University's decision-makers and its investigator were motivated to favor the accusing female over the accused male, so as to protect themselves and the University from accusations that they had failed to protect female students from sexual assault."); *Doe v. Rollins Coll.*, 352 F. Supp. 3d 1205, 1210–11 (M.D. Fla. 2019) (investigation "amidst a clamor of public and campus scrutiny over its treatment of sexual assault complaints by female students" created "circumstantial evidence of bias"); *Doe v. Amherst Coll.*, 238 F.Supp.3d 195, 223 (D. Mass. 2017) (allegations that university was trying to "appease" a biased, student-led movement); *Doe v. Trs. Univ. Pennsylvania*, 270 F. Supp. 3d 799, 823–24 (E.D. Pa. 2017) (allegations regarding "criticism [defendant] has received in the past for not taking the complaints of female students sufficiently seriously").

Plaintiff also alleges evidence of gender bias in that he was investigated for alleged nonconsensual sexual acts with Roe, yet Roe was not investigated for possible nonconsensual acts with Plaintiff, despite Plaintiff's admitted intoxication at the time and Roe's admitted sobriety. FAC ¶¶ 305-306; PageID.480-481. The Sixth Circuit has previously held such disparate treatment constitutes evidence of gender bias for a Title IX claim. *See Miami Univ.*, 882 F.3d 579, 593-94 (denying motion to dismiss where plaintiff alleged OCR pressure, criticism specifically for failing to protect women, and that the University "initiated an investigation into [Plaintiff] but not [the female student]").

Defendants argue that allegations of federal pressure *alone* are insufficient to plausibly allege gender bias.  MSU Defendants' Brief in Support of Motion to Dismiss (hereinafter "Defs.' Br.") at 8-9.  But Plaintiff is not *solely* alleging stale, generic pressure from the federal government or student groups, as did the plaintiffs in Defendants' cited cases, *Doe v. University of Dayton*[2] *and Doe v. N. Michigan Univ.*;[3] instead, Plaintiff alleges specific, contemporaneous, and extensive pressure and criticism of MSU for failing to adequately protect women from sexual violence committed by men, *combined* with inexplicable favoritism of the female complainant's highly flawed narrative, the uniform credibility extended to the female student's witnesses, but not the male student's witnesses, and the failure to investigate Roe.  *See Baum,* 903 F.3d at 586.

Lastly, Defendants' claim that "most of" the events cited by Plaintiff happened "years before" his case (Defs.' Br. at 8) is simply false.  Two of the OCR investigations referenced in the Amended Complaint, and the fallout of the Nassar scandal, were all contemporaneous with Plaintiff's case.  Thus the motion to dismiss Count II should be denied.

B.    <u>Plaintiff has Fully and Adequately Pleaded Selective Enforcement</u>

"To prevail on a 'selective enforcement' claim, the plaintiff must show that a similarly-situated member of the opposite sex was treated more favorably than the plaintiff due to his or her gender."  *Univ. of Dayton*, 766 Fed. Appx. at 284 (citation omitted).  Plaintiff has pleaded exactly such selective treatment here.

---

[2] 766 Fed. Appx. 275, 282 (6th Cir. 2019) (OCR investigation referenced by the plaintiff was *not* connected to allegations of sexual assault, investigation was resolved two years prior to Plaintiff's case, and Plaintiff "[did] not allege, for example, that the University or the individuals involved in his hearing were facing substantial public pressure or outcry in the weeks leading up to his hearing").

[3] 393 F. Supp. 3d 683, 698 (W.D. Mich. 2019) ("general pressure . . . from campus victims' rights advocates . . . is not the same as pressure to punish males because the federal government is investigating the university for discrimination against females.").

Plaintiff alleges that MSU failed to investigate Roe for possible sexual assault despite her acknowledgement that she was sober, while Plaintiff had participated in a "beer Olympics" event followed by consuming hard alcohol, and despite the fact that Roe admittedly removed Plaintiff's underwear and performed oral sex on him without prior consent.  FAC ¶ 306; PageID.480-481. These facts state a valid selective enforcement claim.  *See, e.g.*, *Gischel v. Univ. of Cincinnati*, 2018 WL 9944971at *2-3 (S.D. Ohio Jun. 26, 2018) (selective enforcement claim stated where complainant touched plaintiff's penis without his consent but was not investigated); *cf. Miami Univ.*, 822 F.3d at 596-97 (deliberate indifference claim stated where complainant and plaintiff were both intoxicated but only plaintiff was investigated).

Defendants contends that Plaintiff fails to state a claim for selective enforcement because he did not pursue a *formal* claim against Roe with MSU.  (Defs'. Br. at 10).  This precise argument has been rejected by the Sixth Circuit.  *See Doe v. Miami Univ.*, 882 F.3d at 591;  *Gischel*, *supra*, at *2 (plaintiff need not have made a "formal, or even informal, complaint").  This court should similarly reject MSU's argument and deny its motion to dismiss Count II.

### III.     Defendants' Motion to Dismiss the Constitutional Claims is Groundless

Plaintiff alleges—and Defendants do not deny—that MSU suspended him for sexual assault while denying him a live hearing with cross-examination even though his case turned largely on credibility. FAC, Count I.    Under controlling Sixth Circuit case law, these facts unquestionably state a claim under 42 U.S.C. § 1983 for the violation of Due Process.  *See Doe v. Baum*, 903 F.3d 575, 578 (6th Cir. 2018) ("the Due Process Clause mandates that a university provide accused students a hearing with the opportunity to conduct cross-examination"); *Doe v. Univ. of Cincinnati*, 872 F.3d 393, 401-02 (6th Cir. 2017) (same).  Plaintiff also adequately alleges that Defendants denied Plaintiff equal protection of the law on the basis of sex, in violation of

Section 1983.  *See* FAC, Count III; *Miami Univ.*, 882 F.3d at 596-98.

To remedy these constitutional violations, Plaintiff seeks: (1) an injunction ordering MSU officials to expunge the finding of sexual assault from his record; and (2) damages from the individual Defendants in their personal capacity.  Defendants contend that these claims are barred by the Eleventh Amendment and/or qualified immunity.  They are not.

A.      The Eleventh Amendment Does Not Protect the Individual Defendants

Applying the well-established rule of *Ex Parte Young*, 209 U.S. 123 (1908)—that the Eleventh Amendment permits suits against state officers for prospective injunctive relief—the Sixth Circuit has squarely held the Eleventh Amendment is no bar to a student's claim against state university officials for the vacating of disciplinary after being found guilty of sexual misconduct through proceedings that violated due process.  *See Doe v. Cummins*, 662 F. Appx. 437, 444 (6th Cir. 2016) ("Because Doe I and Doe II are seeking prospective equitable relief, their claims are not barred by the Eleventh Amendment. . . . If successful, . . . the individual defendants would merely be compelled to remove the negative notation from appellants' disciplinary records that resulted from the allegedly unconstitutional disciplinary process.").  Numerous other cases, from this Circuit and others, have reached similar results.[4]

---

[4] *See, e.g.*, *Doe v. Purdue Univ.*, 928 F.3d 652, 666-67 (7th Cir. 2019) (student found guilty of sexual assault through procedures allegedly violating due process could sue for an "injunction ordering university officials to expunge the finding of guilt from his disciplinary record"); *Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007) (negative entries in a student's university records presented a continuing violation sufficient to overcome Eleventh Amendment immunity); *Shepard v. Irving*, 77 F. App'x 615, 620 (4th Cir. 2003) (request to expunge grade from record is not barred by Eleventh Amendment); *Doe. v. Univ. of Colorado*, 255 F. Supp. 3d 1064, 1081-82 (D. Colo. 2017) (Eleventh Amendment does not bar student alleging due process violations in sexual misconduct proceedings from seeking an order that his "disciplinary record be expunged" and that "any and all records pertaining to the investigation be destroyed"); *Cf. Cannon v. Bernstein*, 2013 WL 5449087 (E.D. Mich. 2013) (inmate's claim for "expungement of his disciplinary file" was "not barred by the Eleventh Amendment").

10

Nor does the Eleventh Amendment bar Plaintiff's damages claims against the individual Defendants in their personal capacity. *See, e.g.*, *Kanuszewski v. Mich. Dep't of Health and Human Servs.*, 927 F.3d 396, 413 (6th Cir. 2019) ("The Eleventh Amendment . . . does not bar suits for damages against officers in their personal capacity under § 1983.") (quoting *Maben v. Thelen*, 887 F.3d 252, 270 (6th Cir. 2018)).  Thus, Defendants' Eleventh Amendment arguments must be rejected in full.

      B.    <u>Defendants' Qualified Immunity Defense is Premature and Fails as a Matter of Law</u>

A Rule 12(b)(6) motion is not the appropriate vehicle for a qualified immunity claim: "Although an officer's 'entitle[ment] to qualified immunity is a threshold question to be resolved at the earliest point,' that point is usually summary judgment and not dismissal under Rule 12." *Mills v. Barnard*, 869 F.3d 473, 487 (6th Cir. 2017) (quoting *Wesley v. Campbell*, 779 F.3d 421, 433-34 (6th Cir. 2015)).  *See also Evans-Marshall v. Bd. of Educ. Of Tipp City Exempted Vill. Sch. Dist.*, 428 F.3d 223, 235 (6th Cir. 2005) (Sutton, J. concurring) (fact-intensive nature of applicable tests make it "difficult for a defendant to claim qualified immunity *before discovery*"); *Jacobs v. City of Chicago*, 215 F.3d 758, 775 (7th Cir. 2000) (Easterbrook, J., concurring) ("Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground of dismissal.").

In any event, Defendants' assertion of qualified immunity fails as a matter of law.  First, "qualified immunity only immunizes defendants from monetary damages—not injunctive or declaratory relief."  *Endres v. Northeast Ohio Med. Univ.*, 938 F.3d 281, 302 (6th Cir. 2019) (quotations omitted) (quoting *Kanuszewski v. Mich. Dep't of Health and Human Servs.*, 927 F.3d 396, 417–18 (6th Cir. 2019).  Thus qualified immunity cannot bar Plaintiff's claims for injunctive relief.

Nor does qualified immunity shield Defendants from Plaintiff's damages claims, because

the right to a live-hearing and cross-examination was expressly, explicitly, and clearly established

at the time of the events underlying the Amended Complaint.  *See DiLuzio v. Vill. of Yorkville,*

*Ohio*, 796 F.3d 604, 608 (6th Cir. 2015) (qualified immunity does not protect government officials

from damages if "their actions violate clearly established rights").  As the Sixth Circuit stated in

the very first paragraph of its decision in *Baum*:

> Thirteen years ago, this court suggested that cross-examination may be required in
> school disciplinary proceedings where the case hinged on a question of credibility.
> Just last year, we encountered the credibility contest that we contemplated in *Flaim*
> and ***confirmed*** that when credibility is at issue, the Due Process Clause mandates
> that a university provide accused students a hearing with the opportunity to conduct
> cross-examination.  *Doe v. Univ. of Cincinnati*, 872 F.3d 393, 401-02 (6th Cir.
> 2017).  Today we ***reiterate*** that holding once again . . . .

*Baum*, 903 F.3d at 578 (emphasis added).

Thus, the Sixth Circuit has specifically held that the Due Process requirements of a live-

hearing and cross-examination were clearly established as of 2017 by *Univ. of Cincinnati*, which

was decided before Plaintiff's Title IX proceedings at MSU.  Defendants' assertion that this right

was not clearly established until the 2018 *Baum* decision (Defs.' Br. 16-17) is categorically

repudiated by the Sixth Circuit's own language in that opinion, stating that it merely "reiterated"

the right that *Univ. of Cincinnati* had already "confirmed."  *Baum*, 903 F.3d at 578.[5]

Notwithstanding this express language in *Baum I*, Defendants assert that "the District Court

in *Baum II*—on remand from *Baum I*—considered it 'unquestionabl[e]' that [the right to a hearing

_____

[5] For the same reason, Defendants' assertion that the Sixth Circuit's *Baum* decision "is a new rule
of law that should not have retroactive application" (Defs.' Br. at 18) is frivolous.  And even if
*Baum I* had announced a "new rule"—which it did not—it is well established that "a rule of federal
law, once announced and applied to the parties to the controversy, must be given full retroactive
effect by all courts adjudicating federal law."  *Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 97
(1993); *Schultz v. Hansen*, 28 F. Appx. 513, 515 (6th Cir. 2002) ("in noncriminal matters, after
[this] court decides a rule of law, that rule is the controlling interpretation of the law and must be
given full retroactive effect").

with cross-examination] 'was not a right that was clearly established under federal law' prior to *Baum I*." (Defs.' Br. at 16).  This is a gross misrepresentation.  The District Court in *Baum II* nowhere held—much less "considered it 'unquestionabl[e]'"—that the right to a hearing with cross-examination was not clearly established "prior to *Baum I*."  To the contrary, the Court, which was addressing disciplinary proceedings from *2016*, stated that this right was "at the earliest" clearly established "*in 2017*, by the decision of the court of appeals in Doe. v. Univ. of Cincinnati." *Doe v. Baum*, 2019 WL 4809438 at *22 (E.D. Mich. 2019) (emphasis added) [*Baum II*].

Next, Defendants claim that the district court's opinion in *Doe v. Northern Michigan Univ*ersity, 393 F. Supp. 3d 683 (W.D. Mich. 2019) supports their position. (Defs.' Br. at 16).  The opposite is true.  In the *Northern Michigan* case, the district court expressly recognized that a right to cross-examination was clearly established in 2017 under *University of Cincinnati*, but found that this right was not applicable in the case before the court, because plaintiff in that case had *admitted the allegations against him* and thereby taken the credibility issue off the table.  *Northern Mich.*, 393 F. Supp. 3d at 697.  The *Northern Michigan* court simply and correctly held that there was no clearly established "right to cross-examine an accuser *after the accused affirmed the allegations*" against him.  *Id*. (emphasis added).  In this case, Plaintiff never "affirmed the allegations" against him; to the contrary, he has consistently refuted his accuser's account.  Accordingly, *Northern Michigan* is inapposite.

Finally, Defendants argue that the single-investigator procedure utilized in Plaintiff's case was lawful because Plaintiff was permitted to speak with the investigator, submit evidence, and submit to the OIE questions he wished to be asked of the other party (which the OIE was under no obligation to ask). (Defs.' Br. 17).  Defendants contend that this procedure was the same as the hearing-with-indirect-cross-examination procedure upheld in *Doe v. Cummins*, *supra*.  (Defs.' Br.

17-18).  This claim is absurd.  In *Cummins*, the accused student was given a *live hearing* before a *hearing panel*, *after* the investigation by a different administrator, where he could submit cross-examination questions to the panel, which could then cross-examine the accuser.  *See Cummins*, 662 F. Appx. at 439.  Defendants here gave Plaintiff none of these rights.  FAC ¶ 64; PageID.438.

In *Baum*, the defendants similarly contended that "even if Doe did not have a formal opportunity to question Roe, he was permitted to review her statement and submit a response identifying inconsistencies for the investigator."  *Baum*, 903 F.3d at 582.  The Sixth Circuit dismissed this contention out of hand, stating that "this circuit has already flatly rejected that argument" in *Univ. of Cincinnati*.  *Id.*  In short, the right to a live hearing with cross-examination was clearly established by *Univ. of Cincinnati* in 2017 before Plaintiff's disciplinary proceedings began, and hence Defendants cannot hide behind qualified immunity.[6]

C.    Plaintiff Sufficiently Alleges Involvement of the Individual Defendants

A plaintiff alleging 42 U.S.C. § 1983 claims against individual government actors in their personal capacities must allege "that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).  A plaintiff may sustain this burden by showing that an individual defendant "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations."  *Santiago v. Warmister Tp.*, 629 F.3d 121, 129 (3d Cir. 2010).  *See also Phillips v. Roane County*, 534 F.3d 531, 543 (6th Cir. 2008)

---

[6] In a one-sentence argument, Defendants assert that Plaintiff "forfeited his due process claim by failing to object to MSU's procedures at the time of his hearing." (Defs.' Br. 19).  This claim asserts facts outside of the pleadings and must be rejected on a Rule 12(b)(6) motion.   Further, Defendants cite no authority holding that accused students must raise constitutional claims with university administrators.  In any case, any such objection would have been futile, and thus there is no waiver.  *See Dozier v. Sun Life Assur. Co. of Can.*, 466 F.3d 532, 534 (6th Cir. 2006).

14

(plaintiff must show that a defendant "encouraged the specific incident of misconduct or in some other way directly participated in it."); *Sheehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (plaintiff may allege that defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct.").

Defendants argue that Plaintiff fails to allege sufficient personal involvement of the individual Defendants Durojaiye, Shafer, and Maybank.  (Defs.' Br. 13-14).[7]  This is simply untrue.

Defendant Durojaiye was the Director of the Office of Institutional Equity and the Title IX Deputy Coordinator; as such, he was the person directly in charge of implementing MSU's Title IX policies, which include, here, the unconstitutional single-investigator model utilized in Plaintiff's case.  FAC ¶ 16; PageID.428.  Undoubtedly, Durojaiye was aware of, and coordinated for, the unconstitutional investigation that took place.  In such position, Defendant Durojaiye was also the ultimate signatory on OIE's finding resulting from this constitutionally defective process. Plaintiff thus sufficiently alleges that Durojaiye "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct."  *Sheehee*, 199 F.3d at 300; *see also Baum II,* 2019 WL 4809438 at *5 ("The allegation that [defendant] had the final sign-off on the improperly imposed discipline certainly suffices to establish her personal involvement."); *Doe v. Pennsylvania State Univ.*, No. 17-CV-01315, 2018 WL 317934, at *4 (M.D. Pa. Jan. 8, 2018) (denying Title IX coordinator's motion to dismiss § 1983 claims in his individual capacity).

Maybank's involvement is equally obvious.  Maybank denied Plaintiff's appeal, therefore sealing the finding and sanction that resulted from the unconstitutional process, and that appeal

---

[7] Defendants do not challenge Plaintiff's individual capacity claims against Defendants Engler, Ehlers, or Waldsmith.

denial was also done without a live hearing. FAC ¶¶ 184-186; PageID.455. *See Baum II*, 2019 WL 4809438 at *5 (Plaintiff sufficiently alleged individual claims against appeals board members who denied his appeal without a live-hearing and cross-examination).

Finally, Defendant Shafer, as Associate Director of Student Conduct and Conflict Resolution, was responsible for submitting Plaintiff's case to, and coordinating for the review by, a sanctioning panel, following the unconstitutional process that resulted in the initial finding. FAC ¶¶ 17, 68; PageID.428, 439. As such, he personally partook in the process constituting a violation of Plaintiff's rights. *See Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 569 (6th Cir. 2011) (defendants' "alleged integral involvement in the decision-making process is sufficient at th[e motion to dismiss] stage to make out a colorable claim against them").

### IV. Defendants' Motion to Strike the Class Claims Is Premature, Rests on Factual Speculation Wholly Inappropriate in a Rule(12)(b)(6) Motion, and Repeatedly Misrepresents the Law.

On behalf of himself and other MSU students punished for alleged sexual offenses without ever receiving a hearing or any opportunity for cross-examination, Plaintiff seeks an injunction ordering Defendants to vacate unconstitutional findings of guilt, remove unconstitutional findings of guilt from the students' academic and/or disciplinary records, and refrain from communicating such findings to any third parties. The class claim is legally straightforward and will satisfy the two core purposes of class actions: avoiding wasteful, duplicative litigation and vindicating rights that would otherwise be lost. Defendants' motion to strike is groundless. It is premature; it rests on factual speculation wholly inappropriate in a Rule 12(b)(6) motion; and, even accepting its factual conjectures, it fails as a matter of law.

### A. The Class Claim is Straightforward, Will Avoid Wasteful, Duplicative Litigation, and Will Prevent Many Class Members From Losing Their Rights

The fundamental "purposes of the class action suit are judicial economy and the

16

opportunity to bring claims that would not be brought absent the class action forum." *Reeb v. Ohio Dep't of Rehab. & Corrections*, 435 F.3d 639, 650 (6th Cir. 2006). Both these purposes are satisfied here.

Plaintiff's class claim is unusually straightforward because MSU's Title IX procedures—denying both a hearing and cross-examination—are almost identical to procedures already ruled unconstitutional by the Sixth Circuit. *See Baum*, 903 F.3d at 578; *Univ. of Cincinnati*, 872 F.3d at 401-02. There is absolutely no reason to require wasteful, duplicative litigation by each and every such student individually seeking a re-declaration of what the Sixth Circuit has already made clear, and individually suing for the expungement of records to which they are plainly entitled under long-settled law.[8]

The class claim merely seeks application of *Baum* and *Univ. of Cincinnati* to MSU. The vacating of the results of the unconstitutional disciplinary proceedings, coupled with an injunction against disseminating those tainted results, will not declare any class member innocent. It will not bar MSU from re-trying class members under constitutional procedures. It will not declare MSU liable in damages. It will simply eliminate a continuing constitutional violation that threatens each class member with irreparable harm.

Moreover, without this class action, some class members will almost certainly lose their

---

[8] *See, e.g.*, *Goss v. Lopez*, 419 U.S. 565, 572 (1975) (upholding injunction "ordering defendants to expunge their records" after school suspended students in violation of Due Process); *Piphus v. Carey*, 545 F.2d 30, 32 (7th Cir. 1976) (ordering expungement for public school students suspended without procedural due process), *rev'd on other grounds*, 435 U.S. 247, 252 (1978) (not disturbing the order of expungement); *Pervis v. La Marque Ind. Sch. Dist.*, 466 F.2d 1054, 1058 (5th Cir. 1972) (ordering expungement for students suspended in violation of procedural due process); *Velez-Santiago v. State Univ. of N.Y. at Stony Brook*, 170 A.D.3d 1182, 1183 (N.Y. App. Div. 2d Dept. 2019) (student unlawfully determined guilty of sexual offenses) ("Accordingly, the determination is annulled . . . and all references to the matter are to be expunged from the petitioner's school records").

legal rights. Many are probably unaware they have a right to have the tainted results vacated.  Many may not even be aware that their Due Process rights were violated.  Some will not have the resources to hire lawyers and sue the university themselves.  Some are in danger of losing their rights due to the statute of limitations.  Thus Plaintiff's class claim will both serve "judicial economy" and vindicate rights that would be lost "absent the class action forum"—the two core purposes of the class action mechanism.  *Reeb*, 435 F.3d at 650.

      B.      <u>Defendants' Rule 12(b)(6) Motion to Strike is Premature</u>

"Courts disfavor the practice of striking class allegations before the class-discovery stage." *Schwebel Baking Co. v. Firstenergy Solutions Corp.*, 2018 WL 1419477 (N.D. Ohio 2018).  "With rare exceptions, the appropriate vehicle for testing the sufficiency of class allegations" is a post-discovery "motion for class certification," *Phipps v. Wal-Mart Stores*, 2016 WL 10649206 (M.D. Tenn. 2016) (citation omitted), allowing "rigorous analysis" "predicated on evidence presented by the parties concerning the maintainability of the class action."  *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 851 (6th Cir 2013).  "'A motion to strike class allegations is not a substitute for class determination and should not be used in the same way.'" *Eliason v. Gentek Bldg. Prods.*, 2011 WL 3704823 at *3 (N.D. Ohio Aug. 23, 2011) (quoting *Faktor v. Lifestyle Lift*, 2009 WL 1565954 at *2 (N.D. Ohio June 3, 2009)).

      C.      <u>Defendants Bear a High Burden of Proof</u>.

In the rare case in which a motion to strike class claims is entertained on the pleadings, "the standard is the same as applied in deciding a motion to dismiss under Rule 12(b)(6)." *Cerjanec v. FCA US, LLC,* No. 17-CV-10619, 2018 WL 3729063, at *7 (E.D. Mich. Aug. 6, 2018), motion to certify appeal granted, 2018 WL 7152556 (E.D. Mich. Sept. 4, 2018) .  Thus "the court must accept all of plaintiff's factual allegations as true" and "draw all reasonable inferences in the

plaintiff's favor." *Baum I*, 903 F.3d at 581.  While Plaintiff would bear the burden of proof on a post-discovery motion for certification, *Defendants* bear the burden on a pre-discovery motion to strike, and the burden is a high one: "the defendant bears the burden of establishing that the plaintiff will be unable to demonstrate facts supporting certification, even after discovery and the creation of a full factual record." *Jimenez v. Allstate Indem. Co*., No. 07-14494, 2010 WL 3623176, at \*3 (E.D. Mich. Sept. 15, 2010) (emphasis added).  The "Court may [so] rule *only when 'no proffered or potential factual development offers any hope of altering that conclusion.'*" *Schwebel*, *supra*, at \*14 (emphasis added) (quoting *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011)); *see, e.g.*, *Cernajec*, *supra*, at \*22 (denying Rule 12(b)(6) motion to strike class allegations because defendant failed to prove "that Plaintiffs will never be able to satisfy the prerequisites" of a class action).  As will be shown below, that high burden of proof has not been remotely met here.

     D.     <u>Defendants' Arguments for Striking the Class Claims Rest on Pure Factual Speculation and Repeated Misrepresentations of the Law</u>

     i.   <u>Defendants Challenge Only Commonality</u>

Of the four Rule 23(a) requirements for class certifiability—numerosity, commonality, typicality, and adequacy of representation—Defendants challenge only commonality.  Defs.' Br. 20-25.[9]  Accordingly, because Defendants bear the burden of proof on this motion, see supra, Plaintiff will not here address the other requirements, which in any event are all adequately pleaded

---

[9] In a footnote at the end of their brief, Defendants seem to argue that Plaintiff's Rule 23(b)(2) class action, seeking injunctive relief, is improper because Plaintiff pleads an individual damages claim.  (Defs.' Br. at 25 n.4).  But it is well established that a Rule 23(b)(2) class action is proper in such circumstances; the named plaintiff and other class members may pursue their damages claims after liability is established.  *Gooch v. Life Investors Ins. Co. of Am.*, 672 F.3d 402, 428 & n.16 (6th Cir. 2012).  The case cited by Defendants, *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,* 827 F.3d 223 (2d Cir. 2016), is inapposite, as it dealt with the adequacy of a single plaintiff representing two classes seeking different relief.

in the Amended Complaint.[10]

According to Defendants' brief, Plaintiffs cannot show commonality due to supposed "individualized issues" such as credibility (Def Mem. at 22), prejudice (*id*. at 23) and vague "numerous other issues" (*id*. at 24).  These arguments disregard the appropriate standard on a Rule 12(b)(6) motion, ignore the allegations in the Amended Complaint, and seek to have the facts taken in the light most favorable to them.  In fact, as shown below, commonality is easily satisfied here.

### ii.   Commonality is a "Low Hurdle" and Is Manifestly Satisfied Here.

Commonality is a "'low hurdle' easily surmounted." *In re Aredia & Zometa Prods. Liab. Litig.*, 2007 WL 3012972 at *3 (M.D. Tenn. 2007) (quoting *In re Welding Fume Prods. Liab. Litig.*, 245 F.R.D. 279, 297 (N.D. Ohio 2007)); *Prater v. Ohio Educ. Ass'n*, 2008 WL 2566364 at *2 (S.D. Ohio 2008) ("low hurdle"); *Monroe Cty. Employees Ret. Sys. v. Southern Co.*, 332 F.R.D. 370, 378 (N.D. Ga. 2019) ("low hurdle"); *Cunningham v. Cornell Univ.*, 2019 WL 275827 at *5 (S.D.N.Y. Jan. 22, 2019) ("low hurdle").

Commonality exists when all class members suffered "the same injury." *Walmart Stores v. Dukes*, 564 U.S. 338, 350 (2011).   To satisfy commonality, the named plaintiff must show:

> that there is a *common question that will yield a common answer for the class (to be resolved later at the merits stage),* and that that common answer *relates to the actual theory of liability in the case*.
>
> *Rikos v. Proctor & Gamble*, 799 F.3d 497, 505 (6th Cir. 2015) (emphasis added).

"[T]here need be only one common question to certify a class."  *In re Whirlpool Corp.*, 722 F.3d at 853.  These requirements are satisfied here.

---

[10]  Numerosity is sufficiently pleaded. FAC ¶¶ 212-219; PageID.460-461. Typicality is sufficiently pleaded. FAC ¶¶ 226-227; PageID.462-463. Adequacy of representation is sufficiently pleaded. FAC ¶¶ 228-229; PageID.463.  Because Plaintiff's class claims seek injunctive relief (vacating of disciplinary records), the class action is clearly maintainable under Rule 23(b)(2).

First, every class member here suffered "the same injury."  *Dukes*, 564 U.S. at 350.  As pleaded in the Complaint, all were subjected to severe punishment—suspension or expulsion—for an alleged sexual assault (or another serious sexual offense) at the conclusion of a disciplinary process that violated Due Process by denying them a hearing and any form of cross-examination. Amended Complaint at ¶¶ 288-293.  Moreover, all are continuing to suffer the additional "same injury" of having that unconstitutional finding of guilt preserved on their permanent academic and disciplinary records, threatening reputation and livelihood.  *Id*.

Each and every class member, therefore, is united by the following common contentions: that MSU's hearing-less, cross-examination-less Title IX procedure was unconstitutional; that they had and have a constitutional right to the determination of guilt or innocence through procedures affording them Due Process; and that students living under the cloud of an unconstitutional sexual assault finding are entitled to have that wrongful finding vacated from their records.   These common contentions plainly satisfy the Sixth Circuit's *Rikos* test because they present "common question[s] that will yield a common answer for the class (to be resolved later at the merits stage)," which directly "relates to the actual theory of liability in the case." *Rikos*, 799 F.3d at 505; *see also* 5 Moore's Federal Practice § 23.23[2] ("commonality requirement" in "civil rights cases" can be met by "challeng[ing] policies and practices that apply to all class members").  Thus commonality is easily satisfied here.

iii.   <u>Defendants' "Credibility" Argument Relies on Factual Speculation and Misrepresents the Law</u>

 Defendants' primary argument against commonality is that some students found guilty of sexual assault may have admitted the charges against them, so that credibility was not at issue in their cases and the right to cross-examine did not apply.  (Defs.' Br. 22-23).  From this premise, the conclusion is supposed to follow (according to Defendants) that the class cannot be certified

because determining class membership, or entitlement to relief, will require "individualized" review. *Id*. at 22-24. But Defendants' factual premise is nothing more than speculation, and their supposed conclusion is wrong as a matter of law.

On the present record, it is not known whether a single MSU student found guilty of sexual assault admitted the charges against him. Defendants make no such assertion; they simply conjecture the hypothetical possibility, asking the Court to draw factual inferences favorable to themselves, rather than to Plaintiff as the law requires. Immediately after discovery begins, MSU may concede that there wasn't a single student in this category. Or it may be that one or two students admitted the charges against them, and MSU will be able to identify those cases with the most cursory review of its files. These unknown factual issues are appropriate for discovery, but inappropriate on a Rule 12(b)(6) motion.[11]

Moreover, even assuming that "individualized" review of MSU case files will be necessary to determine whether any class members admitted the charges them, Defendants' argument would still fail as a matter of law. The Sixth Circuit has expressly held that "*the need to review individual*

---

[11] Perhaps MSU is arguing that the class definition is too broad in that it includes individuals who suffered no injury from the denial of cross-examination because credibility was not at issue in their cases. But there is no requirement that every class member was in fact injured. *See Rikos*, 799 F.3d at 505 ("The Supreme Court in *Dukes* did not hold that named class plaintiffs must prove at the class-certification stage that all or most class members were in fact injured to meet th[e] [commonality] requirement."). A "class will often include persons who have not been injured by the defendant's conduct . . . . Such a possibility or indeed invevitability does not preclude class certification." *Kohen v. Pacific Inv. Mgmt. Co.*, 571 F.3d 672, 677 (7th Cir. 2009). *See Warth v. Seldin*, 422 U.S. 490, 502 (1975) (named plaintiffs "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class"). Moreover, the Sixth Circuit has held consistently that class definitions, especially for Rule 23(b)(2) classes, can be adjusted after a factual record is developed. *See, e.g.*, *Rikos*, 799 F.3d at 526; *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 539 (6th Cir. 2012). Thus at most, Defendants' argument might suggest that the class should be narrowed to exclude students for whom credibility was not at issue; that would still fall far short of establishing that no class can be properly certified here.

*files*," even the need for "*substantial* review," in order to determine membership in a class or eligibility for relief, is "*not [a] reason to deny class certification*."  *Young v. Nationwide Mut. Ins. Co*., 693 F.3d 532, 539 (6th Cir. 2012) (emphasis added).  "*Even if it takes a substantial amount of time to review files and determine who is eligible . . . , that work can be done through discovery*."  Id. at 540 (quoting approvingly *Perez v. First Am. Title Ins. Co.*, 2009 WL 2486003 at *7 (D. Ariz. Aug. 12, 2009).  *See also, e.g.*, *Arlington Video Prods. v. Fifth Third Bancorp*, 515 F. Appx. 426, 441 (6th Cir. 2013) (the size of a potential class *and the need to review data concerning individual class members* are *not reasons to deny class certification*) (emphasis added); *Advanced Rehab & Med., P.C. v. Amedysis Holding, LLC*, 2019 WL 4145239 at *4 (W.D. Tenn. Aug. 30, 2019) ("need to review individual files to identify [a class's] members" is "not [a] reason to deny class certification").  Thus Defendants' credibility argument is not only factually speculative, but legally baseless.[12]

    iv.  <u>Defendants' "Prejudice" Argument Misrepresents the Law and Is Speculative</u>

Defendants next assert that each class member "must prove that he suffered prejudice" with an "individualized" showing "that he would not have been disciplined if he had been afforded all the process he was due."  (Defs.' Br. 23-24).  This claim flatly misrepresents the law.

Defendants are saying that in order to be entitled to injunctive relief, a student whose Due Process rights have been violated bears the additional burden of proving that he would not have been sanctioned absent the violation.  But the Sixth Circuit has held the precise opposite:

> To the extent that [a student] seeks reparative relief aimed at restoring him to the position he would have occupied but for the due process violation, he is entitled to such relief unless the *school*

---

[12] In addition, Defendants fail to recognize that every class member was denied not only cross-examination, but *a hearing*.  The right to a hearing is not dependent on whether credibility was at issue, and hence every class member would still have a common claim against MSU's hearing-less Title IX procedures regardless of whether credibility was or wasn't at issue in some cases.

> district can prove, by a preponderance of the evidence, that, even
> had it not deprived [the student] of his right to procedural due
> process, he would have still rightfully been expelled.

*Newsome v. Batavia Local Sch. Dist.*, 842 F.2d 920, 928 (6th Cir. 1988) (original emphasis).  In

other words, lack of prejudice is not an element of the student's claim, but an *affirmative defense*

for which MSU will bear the burden of proof.  This rule is explicitly recognized by the very case

(and only case) cited by Defendants in support of their prejudice argument.  *See Baum II*, *supra*,

at \*33 (stating that lack of prejudice is an "affirmative defense" the university must prove).

As a result, Defendants' prejudice argument collapses under the "well-settled rule that

*potential individualized defenses do not preclude class certification*."  *Anda v. Roosen Varchetti*

*& Olivier, PLLC*, 2016 WL 7157414 at \*4 n.1 (W.D. Mich. Oct. 31, 2016) (emphasis added).  As

the Sixth Circuit stated in *Young v. Nationwide*, *supra*, "Defendants will have some individualized

defenses against certain [class members]; however, *the existence of these defenses does not defeat*

*the commonality requirement*."  693 F.3d at 543 (emphasis added).  *See also Shanehchian v.*

*Macy's, Inc.*, 2011 WL 883659 at \*5 (S.D. Ohio Mar. 10, 2011) ("potential affirmative defenses

against some class members do not bar class certification");  *Cates v. Cooper Tire and Rubber*

*Co.*, 253 F.R.D. 422, 430 (N.D. Ohio 2008) ("potential affirmative defenses against some class

members do not bar class certification");  *Olden v. LaFarge Corp.*, 203 F.R.D. 254, 270 (E.D.

Mich. 2001) ("The mere existence of individualized defenses does not bar class certification.").[13]

---

[13] Other language in *Baum II* could be read to erroneously suggest that any plaintiff claiming a
procedural due process violation must always prove prejudice.  *See, e.g.*, *id*. at \*12 (stating that a
"'procedural due process claim requires a showing of prejudice'") (quoting and citing *Mendoza-Garcia v. Barr*, 918 F.3d 498 (6th Cir. 2019), *Graham v. Mukasey*, 519 F.3d 546 (6th Cir. 2008),
and *Sako v. Gonzales*, 434 F.3d 857 (6th Cir. 2006)).  Judge Lawson may not have been aware that
he was citing *immigration* cases and stating the special rule applicable in such cases.  *See, e.g.*,
*Mendoza-Garcia*, 918 F.3d at 509 ("But in the *immigration* context, we require a showing" of
prejudice) (emphasis added); *Sako*, 434 F.3d at 863 ("prejudice is necessary to establish a due

Moreover, the notion that MSU could realistically succeed on such a defense against even a single class member is wholly speculative. It is difficult to see how the university would be able to *prove* that cross-examination could not have changed the result in a sexual assault proceeding where credibility was in dispute and "*material to the outcome*." *Baum*, 903 F.3d at 584 (emphasis added). Indeed, *Baum* itself rejected as speculative a university's claim that denial of cross-examination was not prejudicial. *Id*.

v.   <u>Defendants' Kitchen-Sink "Other Reasons" Are All Without Merit</u>

Defendants' "other reasons" to preclude class certification (Defs.' Br. 24-25) are meritless. Once again, Defendants ignore the "well-settled rule that potential individualized defenses do not preclude class certification." *Anda*, *supra*, at *12 n.1; *In re Whirlpool Corp. Front-Loading Washer Prods. Litig.*, 302 F.R.D. 448, 470 n.26 (N.D. Ohio 2014).

<u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiff respectfully requests this court deny Defendants' motion to dismiss in its entirety. To the extent this court may be inclined to dismiss any claim, such dismissal should be without prejudice and with leave to amend. *CNH Am. LLC v. Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am. (UAW)*, 645 F.3d 785, 795 (6th Cir. 2011) ("Ordinarily, if a district court grants a defendant's 12(b)(6) motion, the court will dismiss the claim without prejudice to give parties an opportunity to fix their pleading defects.").

Dated: December 9, 2019

Respectfully submitted,

*/s/ Stuart Bernstein*
NESENOFF & MILTENBERG, LLP
Andrew T. Miltenberg, Esq.
Stuart Bernstein, Esq.
Adrienne Levy, Esq.

---

process violation *in an immigration hearing*") (emphasis added). Under *Newsome*, this rule does not apply in the university disciplinary context.

363 Seventh Avenue, 5th Floor
New York, New York 10001
212-736-4500 (telephone)
212-736-2260 (fax)
amiltenberg@nmllplaw.com
sbernstein@nmllplaw.com
alevy@nmllplaw.com

BOGAS & KONCIUS P.C.
Brian E. Koncius, Esq. (P69278)
Local Counsel for Plaintiff
31700 Telegraph Road, Suite 160
Bingham Farms, MI 48025
248-502-5000 (telephone)
248-502-5001 (fax)
bkoncius@kbogaslaw.com
office@kbogaslaw.com

SOMMERS SCHWARTZ, P.C.
Jason J. Thompson, Esq.
Kevin J. Stoops, Esq.
One Towne Square, Suite 1700
Southfield, Michigan 48076
248-355-0300(telephone)
jthompson@sommerspc.com
kstoops@sommerspc.com

***Attorneys for Plaintiff John Doe***