# Exhibit 1

| | |
|---|---|
| Hathaway Parker, LLP<br>Attn: Hathaway, Mark M.<br>445 S. Figueroa Street<br>31st Floor<br>Los Angeles, CA   90071____ | Munger, Tolles & Olson, LLP<br>Attn: Chen, Hailyn J.<br>350 South Grand Avenue<br>Fiftieth Floor<br>Los Angeles, CA   90071-1560 |

## Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

| | |
|---|---|
| Doe<br>                                Plaintiff/Petitioner(s)<br><br>VS.<br><br>The Regents of the University of California<br>                                Defendant/Respondent(s)<br>                                (Abbreviated Title) | No. RG19029617<br><br>Order<br><br>Demurrer<br>Sustained |

The Demurrer was set for hearing on 07/01/2020 at 09:00 AM in Department 23 before the Honorable Brad Seligman. The Tentative Ruling was published and was contested.

The matter was argued and submitted, and good cause appearing therefore,

IT IS HEREBY ORDERED THAT:

The tentative ruling is affirmed as follows: Respondent The Regents of the University of California ("UC") demurs to the Third Amended Petition ("TAP") filed by anonymous petitioner John Doe in this putative class action. The TAP alleges that Doe was a Ph.D. student at University of California's Irvine campus found responsible for violations of the university's Sexual Violence and Sexual Harassment Policy ("SVSHP") in a process that denied him a fair hearing.

The court has twice sustained demurrers to the petitioner's class allegations. (See Order of Dec. 11, 2019; Order of March 17, 2020.) In sustaining UC's demurrer to the class allegations in the Second Amended Petition, the Court granted leave to file the TAP to address shortcomings with commonality and predominance problems in the prior petition's class allegations. As discussed below, petitioner has not remedied these defects, and the Court infers that further leave to amend would be futile. The demurrer to the TAP's class allegations is SUSTAINED WITHOUT LEAVE TO AMEND and UC shall answer petitioner's individual allegations.

LEGAL STANDARDS

The standard for construing a complaint on demurrer is long-settled: "We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed. [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.]" (Blank v. Kirwan (1985) 39 Cal.3d 311, 318.)

A party may object by demurrer to allegations that claims or defenses can be asserted on behalf of a class of absent parties. Such a demurrer should only be sustained if, "assuming the truth of the factual allegations in the complaint, there is no reasonable possibility that the requirements for class certification will be satisfied." (Tucker v. Pac. Bell Mobile Servs. (2012) 208 Cal.App.4th 201, 211, citing Bridgeford v. Pac. Health Corp. (2012) 202 Cal.App.4th 1034, 1041-1042, Gutierrez v. Cal. Commerce Club, Inc. (2010) 187 Cal.App.4th 969, 975.) If there is any reasonable possibility that the pleading party "can plead a prima facie community of interest among class members, the preferred

course is to defer decision on the propriety of the class action until an evidentiary hearing has been held on the appropriateness of class litigation." (Gutierrez, supra, 187 Cal.App.4th at p.975.)

When the court has already sustained a demurrer to similar allegations with leave to amend, and the amendment does not remedy the facial deficiencies, this Court may "infer that the pleader has no additional allegations with which to make its claim certain and has already pleaded its case to best advantage" and conclude that permitting a further opportunity for amendment would be futile. (Cf. Hills Transp. Co. v. Southwest Forest Industries, Inc. (1968) 266 Cal.App.2d 702, 713-714.)

DISCUSSION

The TAP alleges that Doe seeks to represent a class of "all University of California students: (1) adjudicated under PACAOS-Appendix-E: Sexual Violence and Sexual Harassment Student Adjudication Framework (1/1/2016) (Exhibit 1) and/or local University of California campus procedures modeled on the aforementioned systemwide policy; (2) where the student faces suspension or a more severe sanction; (3) where either the written notice of investigation findings and recommended determinations, or the investigation report, or the written notice setting forth the Student Conduct office's decision, or the Appeal Body's written report specifies that credibility was central to the findings, and (4) where the university did not provide for questioning or cross-examination of the complainant or witnesses during a live hearing before a neutral adjudicator." (TAP ¶ 29.)

The FAP erred because it defined the class in terms of a "failsafe" legal conclusion-i.e., all students accused under the challenged policies "with respect to complaints that, if substantiated, could result in a severe sanction for the respondent, and where the credibility of any party or witness was central to the finding." (FAP ¶ 4; see Order of Dec. 11, 2019.) The SAP erred by broadening the class definition to include all students found responsible for violations of the SVSHP under UC's allegedly problematic procedures, regardless of what happened in their proceedings. (See Order of March 17, 2020.) In attempting to thread a middle ground between these prior rulings, TAP combines the errors of both.

The TAP's definition attempts to solve both problems by defining the class in terms of "suspension or a more severe sanction" rather than just "a severe sanction" and "written report [that] specifies that credibility was central to the findings" rather than just requiring that "credibility was central to the findings." The definition still begs the question of what sanctions are "severe" other than suspension. This problem might be solved by an amendment enumerating the penalties that count as severe.

The TAP's class definition also relies on the unsupported assumption that UC's records will ascertainably record whether one or more credibility determinations were "central" to the adjudication. The TAP does not allege that investigators or finders of fact were required to record whether credibility determinations were central to their decision, nor that they commonly did so, nor that they did so in a shared or standardized way. In their opposition brief, petitioners admit that this issue might require some individualized inquiry but suggest that this could be manageably determined by allowing counsel to review UC's discipline records for reports or adjudications for terms "cognizably synonymous with 'central'" like "primary, key, [or] determinative."

The problem here is not whether attorneys could manageably litigate the question but rather whether an absent class member could easily identify himself or herself as a class member. A class is ascertainable "when it is defined 'in terms of objective characteristics and common transactional facts' that make 'the ultimate identification of class members possible when that identification becomes necessary.'" (Noel v. Thrifty Payless, Inc. (2019) 7 Cal.5th 955, 980, citing Hicks v. Kaufman and Broad Home Corp. (2001) 89 Cal.App.4th 908, 914.) That includes a class definition "that [is] 'sufficient to allow a member of [the class] to identify himself or herself as having a right to recover based on the [class] description.'" (Ibid., citing Bartold v. Glendale Federal Bank (2000) 81 Cal.App.4th 816, 828.) This implicates due process because an absent class member must be able to determine whether he or she would be bound by a judgment when weighing whether to intervene, opt out, or sit by and allow proceedings to go forward. The TAP's class definition does not allow an absent class member to reasonably self-identify without vague determinations about whether UC's records adequately identify credibility determinations as "central" (or "primary, key, [or] determinative"), when no allegations support the conclusion that all or most adjudication records would include a statement about whether their credibility determinations were "central."

In addition, Petitioner's proposal that counsel could determine the severity of the sanction and centrality

of witness credibility, on a case-by-case basis, also shows that there is not a reasonable possibility common questions of law or fact would not predominate in the litigation.  (See Moen v. Regents of the University of California (2018) 25 Cal.App.5th 845, 854 ["The party advocating class treatment must demonstrate, among other factors, predominant common questions of law or fact . . . ."], internal punctuation omitted.)  The questions of severity of sanction and centrality of credibility would still turn on case-specific facts, regardless of whether the investigator or appellate body used the word "key," "central," or "determinative" in an official report or record of proceedings.  The petitioner has not identified any kind of common facts or evidence that would prove severity of sanction or centrality of credibility on a common, classwide basis.

The Court has twice allowed petitioner leave to amend the petition to propose an ascertainable class and predominant common issues of law or fact.  The Court infers from his failure to do so that petitioner has pleaded his case to best advantage and that further leave to amend would be futile.

ORDER

UC's demurrer to Doe's class allegations is SUSTAINED WITHOUT LEAVE TO AMEND.  UC must file its answer to Doe's individual allegations within 10 court days of service of this order.

Prevailing party shall serve a copy of this order upon all parties forthwith and file a proof of service with the Court.

Dated:  07/01/2020

*facsimile*

_____
Judge Brad Seligman